**In re MARINE MIDLAND MOTOR VEHICLE LEASING LITIGATION.**

No. 92–CV–421A(H).

United States District Court, W.D. New York.

June 2, 1994.

Irving M. Shuman, Buffalo, NY, and Howard Langer, Philadelphia, PA, for plaintiff.

Paul K. Stecker, Buffalo, NY, for defendant.

Michael H. Landis, Trevose, PA, for proposed intervener.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

On May 10, 1994, a hearing was held on class plaintiffs' application for approval of the settlement of the two provisionally-certified class actions, which have been consolidated under the above caption and civil number. Also pending are the joint petition of class counsel for an award of attorneys' fees, reimbursement of litigation costs and expenses, and an incentive award to class representatives, as well as the petition of counsel for Murray Tapper, a member of Settlement Class A, for attorneys' fees and costs. Upon review and consideration of the pleadings submitted, and for the reasons set forth below, class plaintiffs' application for approval of the settlement is granted, class counsel's fee petition is granted, and Murray Tapper's counsel's fee petition is denied.

### *BACKGROUND*

The factual and procedural background of these consolidated actions has been set forth at length in this court's previous orders, in the notice of proposed settlement, and in the pleadings and affidavits on file. For present purposes, the background can be summarized as follows.

On May 13, 1991, an action was filed in the Western District of New York entitled *Quevedo, et al. v. Marine Midland Automotive Financial Corp., et al.,* 91–CV–0307A (W.D.N.Y.), on behalf of six named plaintiffs and a class of persons who leased vehicles from Marine Midland Financial Corporation (MMAFC) or one of several entities serviced by MMAFC, extended their leases, and then purchased the vehicle. The complaint alleges that defendants advised lessees that the lease extensions would be on the same terms as the lease, but that subsequently defendants unilaterally changed the terms in a manner adverse to lessees by altering the method of allocating lease payments between rental and depreciation during the extension period from the method specified in the lease to a method that favored the defendants. As a result, lessees who elected to purchase the vehicle paid a price higher than they should have paid under the original lease terms. Plaintiffs allege that defendants' activities violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Truth in Lending Act and various state laws.

The plaintiffs moved for class certification on June 17, 1991. That motion was deferred pending resolution of defendants' motion to dismiss. Arguments were heard on the motion to dismiss in December, 1991, and decision was reserved by the district court. Meanwhile, discovery proceeded and plaintiffs obtained responses to interrogatories, requests for admissions and document demands.

On June 30, 1992, a second action, *Freedman–Harris v. Marine Midland Automotive Financial Corp.,* 92–CV–0421A (W.D.N.Y.), was filed on behalf of a class of lessees who leased vehicles from MMAFC or one of the entities serviced by MMAFC and returned the cars at the conclusion of the lease. The complaint alleges that MMAFC billed these persons for excess wear and tear charges which MMAFC never expended. Plaintiffs allege that this violated a provision of the lease limiting such charges to amounts actually expended. Recovery was sought under RICO and various state laws. As in the *Quevedo* case, a motion for class certification was filed but deferred pending adjudication of a motion to dismiss, and discovery proceeded.

Upon referral of the *Freedman–Harris* case to this court pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for pretrial matters

and dispositive motions, a schedule was immediately established for briefing and argument of the motion to dismiss. Prior to the November 24, 1992 argument date, counsel notified the court that settlement discussions had been initiated, and requested an adjournment of the motion to dismiss. Subsequently, a series of conferences were held by this court at which substantial progress was made toward settlement. However, during a telephone conference on July 16, 1993, counsel advised the court that settlement was not possible. This court ordered that the motion to dismiss be withdrawn and resubmitted as of the date of the telephone conference, set a schedule for supplemental briefing and argument of the motion to dismiss, and heard argument on September 2, 1993 (*see* Item 23). Decision was reserved at that time.

On October 29, 1993, defense counsel advised the court that the parties were very close to settlement of both the *Quevedo* and *Freedman–Harris* cases, and would soon move for preliminary approval of the class action settlements. After further pretrial conference, the parties consented to proceed before the Magistrate Judge (Item 24).

On February 3, 1994, plaintiffs filed an application for approval of the settlement, and attached an executed copy of the Settlement Agreement dated February 1, 1994 (91–CV–307A, Item 21, Ex. A). A copy of the Settlement Agreement is attached as Appendix A to this order.

On February 4, 1994, the two actions were consolidated under the caption *"In re: Marine Midland Auto Leasing Litigation"* bearing docket Number 92–CV–0421. On February 10, 1994, the court provisionally certified two sub-classes, Class A and Class B, and approved the form and content of a notice of proposed settlement (Item 27). The order also directed mailing of a notice of the proposed settlement to members of the class within forty (40) days of the order and directed that exclusion from the settlement class and objections to the settlement be postmarked within sixty (60) days of entry of the order. Finally, the order scheduled a hearing on the proposed settlement for May 10, 1994. On February 22, 1994, the notice to the class was amended in certain respects but all other provisions of the February 10, 1994 order remained in effect. On March 21, 1994, notices were mailed to 53,442 potential class members, and on March 30, 1994, the approved notice was published in the *Wall Street Journal* (Item 43).

On February 24, 1994, Murray Tapper, an individual residing in Huntingdon Valley, Pennsylvania, moved to intervene in this action. Murray Tapper is the named representative plaintiff in a proposed class action which was originally filed in Pennsylvania state court and subsequently removed to federal court in the Eastern District of Pennsylvania.

The Pennsylvania action, which has been stayed pending this court's decision on the proposed settlement of these consolidated actions, alleges that Mazda American Credit (one of the leasing companies named in the *Freedman–Harris* and *Quevedo* cases) charged class members for excess wear and tear on their leased vehicles without actually incurring the cost. This is the same general allegation common to the class in the *Freedman–Harris* case. However, Tapper brought his claim under the Pennsylvania Consumer Protection Law ("CPL"), 73 Pa. Cons.Stat. § 201–1 *et seq.,* whereas the plaintiffs in *Freedman–Harris* brought the same claims under RICO. Tapper also brought a claim against the bank and Management Adjustment Bureau ("MAB"), the debt collection agency involved in his case, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

On April 8, 1994, Tapper filed notice of his intent to appear and object to the proposed settlement on the following grounds:

a. Lack of adequate representation and conflict of interest;

b. Failure to provide a *pro tanto* release on behalf of subclass A members for amounts paid or retained for lease termination liabilities not involving excess wear and tear;

c. Lack of authority to release claims made under the FDCPA and the Pennsylvania CPL, and claims against MAB; and

d. Insufficiency of the settlement.

On April 15, 1994, after briefing and argument, this court denied Tapper's motion to intervene (Item 44). The court found that the "option out" provision of the settlement adequately protected Tapper's interests.

On April 18, 1994, class counsel filed their joint petition for $823,000.00 in attorneys' fees, reimbursement of litigation costs and expenses in the amount of $54,442.62, and an award of an incentive payment in the amount of $500.00 to each of the seven designated class representatives (Item 46). No objections to this petition have been filed.

Also on April 18, 1994, counsel for Murray Tapper filed a petition for $67,920.13 in attorneys' fees and costs to be paid from the settlement fund (Item 45). Class counsel has opposed this petition (Item 50).

On April 29, 1994, Tapper withdrew all objections to the proposed settlement except his objection based on the failure of the settlement to provide a *pro tanto* release from liability for non-excess wear and tear charges (Item 51). Finally, at the hearing on objections on May 10, 1994, Tapper's counsel advised the court that this last objection was withdrawn. No other objections to the proposed settlement have been filed within the period allowed, which expired on April 27, 1994.

## DISCUSSION

### I. Approval of the Settlement.

Under the terms of the February 1, 1994 Settlement Agreement, defendants have agreed to pay $2,470,000.00 into an interest-bearing account, in return for dismissal with prejudice and release of all claims that have been or could have been asserted by class members. The parties have also agreed to retain the Certified Public Accounting firm of Heffler & Associates to administer the notice and claims process, for the fee of $325,000.00 to be paid by defendants. Finally, defendants have agreed to release all class members from any pending claims for excess wear and tear charges, conservatively valued at $1,000,000.00. The total value of the proposed settlement is thus stated at $3,795,000.00, against a projected full value of approximately $5,900,000.00 in damages from

the *Quevedo* and *Freedman–Harris* actions combined.

■ Court approval of class action settlements is required under Rule 23(e) of the Federal Rules of Civil Procedure. In deciding whether to approve a proposed class action settlement, the court must determine whether the terms are fair, reasonable and adequate. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Chatelain v. Prudential–Bache Securities, Inc.,* 805 F.Supp. 209, 212 (S.D.N.Y.1992). The Second Circuit has identified nine factors that should be considered in determining the fairness of a proposed settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974) (citations omitted); *see also County of Suffolk v. Long Island Lighting Co. ("LILCO"),* 907 F.2d 1295, 1323–24 (2d Cir.1990).

### A. Complexity, Expense and Duration.

■ This court has had the opportunity to consider the complexity of the issues involved in the *Freedman–Harris* case during the course of briefing and argument of the motion to dismiss, as well as during the many pretrial, status, telephone and settlement conferences conducted by the court. In *Quevedo,* argument of the motion to dismiss took an entire day in December, 1991. Discovery in both cases had proceeded through interrogatories, requests for admissions and document production, but depositions had barely begun. The litigation has already lasted three years, and further prosecution of

either or both of these actions would likely have taken many more weeks of discovery, motions, trial preparation, trial itself, and appeal. Such protracted litigation would undeniably have reduced the recovery and delayed the payment of any judgment to the class members. *See, e.g., Chatelain v. Prudential–Bache, supra,* 805 F.Supp. at 213; *In re Gulf Oil/Cities Service Tender Offer Litigation,* 142 F.R.D. 588 (S.D.N.Y.1992).

## B. Reaction of the Class.

In response to the 53,000 notices sent to prospective class members, there has been only one objection to the settlement—Murray Tapper's. That single objection has now been withdrawn. Class counsel has further advised the court that approximately 6,000 notices have been returned as undeliverable, and that 45 potential class members have opted out. This response by the class raises a strong presumption that the terms of the Settlement Agreement are indeed favorable.

## C. Stage of Proceedings and Amount of Discovery.

As already stated, counsel for the parties in the *Quevedo* and *Freedman–Harris* cases have conducted substantial discovery, have briefed and argued extensive motions to dismiss, and have engaged in protracted discussions and negotiations resulting in the proposed settlement. The litigation has thus proceeded to a stage at which counsel has demonstrated a thorough understanding of the complexity of the issues and the strengths and weaknesses of their respective claims, defenses and strategies.

## D. Risks of Establishing Liability.

Plaintiffs in both *Quevedo* and *Freedman–Harris* faced considerable risks in establishing the RICO liability of defendants, especially in light of recent caselaw interpreting the requirement of "investment injury" under 18 U.S.C. § 1962(a), *see, e.g., Giuliano v. Everything Yogurt, Inc.,* 819 F.Supp. 240, 248 (E.D.N.Y.1993); *Gelb v. American Tel. & Tel. Co.,* 813 F.Supp. 1022, 1024 (S.D.N.Y. 1993), and the sufficiency of allegations of an "enterprise" based on a corporate parent-subsidiary relationship. *See, e.g., Britting-*

*ham v. Mobil Corp.,* 943 F.2d 297, 305 (3d Cir.1991); *Discon, Inc. v. NYNEX Corp.,* No. 90–CV–546A, 1992 WL 193683 (W.D.N.Y. June 23, 1992).

## E. Risks of Establishing Damages.

The sheer size of the combined subclasses—over 50,000 members—demonstrates that proof of individual damage claims would be extremely burdensome. For example, in the *Quevedo* case, individual damage claims would be calculated as the difference between the purchase price and the amount that would have been charged had defendants properly calculated the residual value of the vehicle under either of two depreciation methods. While these calculations would have been somewhat complicated, they presumably would have involved a relatively small measure of risk as compared to proving damage to the individual members of the larger *Freedman–Harris* subclass. In that regard, it became evident during settlement negotiations that class members had been charged varying amounts at the end of their respective lease terms which might or might not have been attributable to excess wear and tear. It also became evident that defendants failed to recover, in varying degrees, properly assessed wear and tear charges as well as other properly assessed end-of-term liability charges.

Based on these uncontested representations, it is clear that the negotiated settlement successfully avoids substantial risks of establishing the amount of damages that would have been chargeable against defendants if plaintiffs had prevailed at trial.

## F. Risks of Maintaining the Class Action Through the Trial.

The court has considered the risks involved in certification of the proposed subclasses, especially in light of a recent Second Circuit decision denying certification to a proposed class of automobile lessees in a suit challenging lease agreements under the disclosure requirements of the federal Consumer Leasing Act. *Lundquist v. Security Pacific,* 993 F.2d 11 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). The court has also considered the

split of authority cited by plaintiffs regarding the propriety of RICO class actions (*compare County of Suffolk v. LILCO, supra, with Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993)), as well as several cases cited to illustrate the inherent risks involved in bringing a class action to a jury. All of these considerations lend further support to the application for approval of the proposed settlement.

### G. Ability of Defendants to Withstand a Greater Judgment.

The parties have not addressed this factor in their papers, and it has therefore not been accorded any weight in this court's reasonableness determination.

### H. Range of Reasonableness of the Fund in Light of the Best Possible Recovery.

As discussed above, the estimated full value of the combined *Quevedo* and *Freedman–Harris* actions is $5,900,000.00, and the settlement provides for a cash fund of $2,470,-000.00. This results in a fund of approximately 41% of the best possible recovery, which is well within the range of reasonableness as established by other court-approved class action settlements cited by plaintiffs' counsel. *See, e.g., County of Suffolk v. LILCO, supra* (court approved settlement of less than 10% of estimated minimum recoverable damages); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534 (S.D.Fla.1988), *aff'd,* 899 F.2d 21 (11th Cir.1990) (court approved settlement of 5.7% of total damages recoverable); *In re Anthracite Coal Antitrust Litigation,* 79 F.R.D. 707, 714 (M.D.Pa. 1978), *aff'd in part, vacated in part sub nom., Colonial Fuel Corp. v. Blue Coal Corp,* 612 F.2d 571 (3d Cir.1979) (court approved settlement of 28% of maximum possible recovery).

Moreover, the total cash value of the proposed settlement ($2,470,000.00 + $325,-000.00 administration costs = $2,795,000.00) results in a settlement of approximately 47% of the full value of the combined actions ($5,900,000.00). When the estimated value of the release of excess wear and tear charges ($1,000,000.00) is added to the total cash value of the settlement ($2,795,00.00 + $1,000,-000.00 = $3,795,000.00), the percentage of full value becomes approximately 64%.

### I. Range of Reasonableness of the Settlement in Light of Attendant Risks of Litigation.

As discussed above, considering the risks, delays and expenses associated with trial of a case of this magnitude, the proposed settlement is well within the range of reasonableness as established by prior court-approved class action settlements.

Upon consideration of all of these factors, and upon consideration of the objection of Murray Tapper, the proposed settlement is approved as fair, adequate and reasonable.

### II. Fee Petition of Plaintiffs' Counsel.

■ The law firms of Gross, Shuman, Brizdle & Gilfillan, P.C. and Berger and Montague, P.C., as class counsel for plaintiffs, have filed a joint petition for an award of attorneys' fees in the amount of $823,-000.00, reimbursement of costs and expenses in the amount of $54,442.62, and incentive awards of $500.00 to each of the seven designated representative plaintiffs (Item 46). All of these amounts would be paid from the settlement fund, and would deplete the fund by a total of $880,460.00. No objections to this petition have been filed, nor were any objections stated on the record at the fairness hearing.

Courts in the Second Circuit have granted fee awards of 15% to 50% of the entire settlement fund in class actions. *Chatelain v. Prudential–Bache, supra,* 805 F.Supp. at 215; *In re Warner Communications Securities Litigation,* 618 F.Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir.1986); *see also* cases cited in Item 46, Ex. A. Where counsel have helped create a fund to be shared by numerous plaintiffs, the trend is to award fees based on a percentage of the fund rather than on the "lodestar" calculation, which is based on number of hours worked (often enhanced by a multiplying factor) multiplied by an hourly rate. *In re RJR Nabisco, Inc. Securities Litigation,* No. 88 Civ.

7905 (MBM), 1992 WL 210138, *6 (S.D.N.Y. 1992); *Chatelain v. Prudential–Bache, supra.* The presumptively reasonable rate is 30% of the fund, adjusted upward or downward depending on extraordinary circumstances. *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1378–79 (N.D.Cal. 1989), *cited in RJR Nabisco, supra,* 1992 WL 210138 at *7; *see also* cases cited at Item 46, Ex. A.

In approving applications for attorneys' fees, courts in this circuit consider the following factors:

(1) time and labor expended by counsel; (2) magnitude and complexity of the litigation; (3) risk of the litigation; (4) quality of the representation; (5) requested fee in relation to the settlement; and (6) public policy considerations.

*In re Warner, supra,* 618 F.Supp. at 746–47; *see also City of Detroit v. Grinnell Corp., supra,* 495 F.2d at 470. Here, the affidavits submitted in support of the fee petition demonstrate that plaintiffs' counsel have expended a total of 1,558.20 hours since the inception of their investigation of these cases through April 14, 1994 (Item 47, pp. 6–7). As discussed above, these cases involve over 50,000 potential claims and were sued on the basis of complex legal theories carrying substantial risks of success. Based on the quality of the briefs and other written material submitted on the various motions presented, the level of oral advocacy at various hearings, the court's dealings with counsel at the several pretrial and settlement conferences, and the information submitted regarding counsel's prior experience with complex commercial litigation in federal court, this court has no reservations in finding that the quality of representation of the plaintiff classes has been of the highest caliber throughout.

The requested attorneys' fee award of $823,000.00 represents 33.3% of the cash fund alone. When the administration costs are added to the settlement amount, the requested fee represents approximately 29.45% of the settlement. When the estimated value of the released wear and tear claims are considered, the fee represents approximately 21.7% of the settlement.

Finally, with regard to public policy considerations, the court takes note that, largely through the efforts of plaintiffs' class counsel, two very complex, contentious and time-consuming cases have been removed from the district court's congested trial docket. The court finds this to be a valuable conservation of judicial and other public and private resources when compared to the amount of time and money that would have been spent if the motions to dismiss were denied, discovery continued, and the cases proceeded to trial and judgment.

For all of these reasons, and in the absence of any objections, I find that the requested amount of $823,000.00 in attorneys' fees is justified under the circumstances presented. Moreover, I have reviewed the schedules of disbursements (Item 47, Ex. A) and find them to be reasonable. The requested amount of $54,442.62 for reimbursement of expenses is justified. Finally, in the absence of any objections, each of the seven designated representative plaintiffs is awarded the amount of $500.00 over and above their *pro rata* shares of the settlement fund, in recognition of their efforts on behalf of the subclasses and as incentive for similar efforts in future class actions.

### III. Fee Petition of Murray Tapper's Counsel.

■ Smolow & Landis, as counsel for Murray Tapper, have filed a petition for an award of $67,920.13 in attorneys' fees and costs to be paid from the settlement fund in this action (Item 45). Counsel contend that, through their efforts, the settlement fund was enhanced, the releases of the excess wear and tear charges were obtained, and administrative costs were reduced.

Class counsel object to this fee petition, arguing that most if not all of the efforts of Tapper's counsel were undertaken to obstruct rather than aid settlement of these actions.

■ Attorneys' fee awards from a common fund depend on whether the attorneys' "specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund." *Lindy Bros. Builders,*

*Inc. v. American Radiator, Etc.*, 540 F.2d 102, 112 (3d Cir.1976). As stated by the Second Circuit in *County of Suffolk v. LILCO, supra:*

> This long-established doctrine is designed "to permit 'fair and just allowances for expenses and counsel fees to [those] parties promoting the litigation.'" *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977) (quoting *Trustees of the Internal Improvement Fund v. Greenough*, 105 U.S. 527, 536 [26 L.Ed. 1157] (1881)). "The theory is that an attorney whose actions have conferred a benefit upon a given group or class of litigants may file a claim for reasonable compensation for his efforts." *Id.*

907 F.2d at 1326. The Second Circuit has also recently held that attorneys who do not formally represent the class, even though their efforts in representing others in parallel litigation might have "incidentally" benefited the class, cannot collect fees from the settlement fund unless the parallel litigation was "sufficiently related to the class action involving Class Counsel" so as to warrant payment of fees from the fund. *Class Plaintiffs v. Jaffee & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir.1994).

Accordingly, in order for the court to grant the fee petition of Tapper's counsel, counsel must demonstrate that they have performed specific services that have benefited the fund in some tangible way. Tapper's counsel argue that they have benefited the class in three areas. Each of these arguments will be addressed in turn.

### 1. Increase of Settlement Fund.

Tapper's counsel claim that the settlement fund was increased to its current cash value of $2.47 million as a result of their efforts in the Pennsylvania case. They claim that at the time the *Tapper* action was filed, settlement negotiations in the *Freedman–Harris* case had stalled and the case was awaiting a decision on defendants' motion to dismiss. By contrast, according to counsel, the *Tapper* case had quickly proceeded towards class certification and trial.

Tapper's counsel raise the inference that the settlement of the *Quevedo* and *Freedman–Harris* cases proceeded, or that settlement offers were enhanced, as a result of the timing and progress of the Pennsylvania litigation. The court refuses to draw such an inference. This court was directly involved in the extensive efforts to settle these actions prior to protracted discovery and trial. This court and the district judge in *Quevedo* heard and considered substantial motions to dismiss. Class counsel and defendants' counsel actively pursued the *Freedman–Harris* and *Quevedo* actions throughout, and had done so long before the *Tapper* action was filed in Pennsylvania.

Moreover, Tapper's counsel has presented no direct evidence in support of their claim that the filing and prosecution of the Pennsylvania action increased the settlement fund in this case. The only evidence submitted is a letter to Tapper's counsel dated December 28, 1993, advising that counsel for Marine Midland Bank was prepared to discuss settlement of the *Tapper* case. There is nothing in the record to indicate that any such discussions ever took place, or that counsel even responded to the letter. In the absence of any specific evidence linking Tapper's counsel's efforts more directly to the settlement achieved between class counsel and defendants, the court cannot infer that the mere timing of events in the Pennsylvania action affected the events in this action, or increased the settlement fund, in any way.

Finally, any benefit to the class or enhancement of the fund that might be attributable to the efforts of Tapper's counsel in the Pennsylvania action has been negated by the unsuccessful filing and argument of Tapper's motion to intervene and the filing, hearing and subsequent withdrawal of Tapper's objections to the settlement in this case.

### 2. Release of Excess Wear and Tear Claims.

Tapper's counsel argue that the March 18, 1994 addendum to the Settlement Agreement, which provided for the release by defendants of all excess wear and tear charge claims pending against class members, was a direct result of Tapper's motion to intervene and objection to the proposed settlement.

According to counsel, the timing of the addendum is *prima facie* proof that the beneficial release of these claims would not have occurred but for their efforts.

In the absence of proof suggesting that Tapper's counsel performed specific services resulting in the addendum to the Settlement Agreement, this court refuses to attach any significance to the timing of the addendum. As class counsel and defense counsel point out, the addendum was not a result of Tapper's counsel's efforts but was added to provide explicitly for a release that was already implicit in the agreement. Thus, even if Tapper's mere appearance in the action may have precipitated the addendum, Tapper's counsel has failed to show how the addendum conferred any benefit on the fund that was not already covered in the agreement.

Moreover, Tapper's intervention attempt was rejected by this court as meritless, and his objections to the settlement have been withdrawn. As discussed above, any benefit that might have been conferred on the class by Tapper's counsel has been offset by their efforts to prevent approval of the settlement.

### 3. Reduced Administrative Costs.

Tapper's counsel claim that as a result of their efforts, defendants in the Pennsylvania action were ordered to preserve records necessary to identify and notify potential class members and to calculate damages. Tapper's counsel have submitted no other evidence to show that the records subject to that order had not already been produced, discussed or relied on during the course of settlement negotiations that resulted in execution of the Settlement Agreement in this case on February 1, 1994.

Accordingly, Tapper's counsel have failed to show that their efforts benefitted the class in any way so as to allow for the payment of attorney's fees from the fund. The fee petition of Tapper's counsel is therefore denied.

### CONCLUSION

For the foregoing reasons, the proposed settlement of these class actions is approved, as provided in the Settlement Agreement dated February 1, 1994 and addendum thereto, copies of which are attached to this order as Appendix A. The two actions consolidated under the above caption and civil number are hereby dismissed with prejudice.

The Plan of Distribution (Item 38) is likewise approved. A copy of the plan of Distribution is attached to this order as Appendix B.

Class plaintiffs and members of the settlement classes who have not elected to be excluded in the specified manner, and their successors and assigns, are hereby enjoined from commencing or continuing any action or proceeding seeking recovery on any released claim against any released person, as defined and provided in the Settlement Agreement. A list of all class members who elected during the allotted time period to be excluded from membership in the class is attached to this order as Appendix C.

Defendants Marine Midland Bank, successor by conversion to Marine Midland Bank, N.A., Marine Midland Auto Lease Corp., and Marine Midland Automotive Financial Corporation, and their successors and assigns, are hereby enjoined from commencing or continuing any action or other proceeding to recover excess wear charges from class plaintiffs or members of the classes who have not requested to be excluded from membership in the class in the specified manner.

The court reserves continuing jurisdiction over the consummation and enforcement of the terms of the Settlement Agreement and this order and the distribution of settlement funds.

Class counsel's fee petition (Item 46) is granted. The law firms of Gross, Shuman, Brizdle & Gilfillan, P.C., and Berger & Montague, P.C. are jointly awarded attorneys' fees in the amount of $823,000.00. Gross, Shuman, Brizdle & Gilfillan, P.C. is awarded the amount of $30,501.87, and Berger & Montague is awarded the amount of $23,940.87, for a total of $54,442.62 as reimbursement for out-of-pocket expenses as set forth in Item 47, Ex. A. Incentive awards shall be paid in the amount of $500.00 to each of the following named class representatives: Freedman–Harris Agency, Inc.; George A. Quevedo; Dale M. Strand; Sara J. Strand; Dawn I.

Brett; John F. Lage; and Gary R. Woempner. These attorneys' fee, expense, and incentive award amounts are all to be paid from the settlement fund.

Counsel for Murray Tapper's fee petition (Item 45) is denied.

This order shall be entered by the Clerk of the Court as of the date set forth below pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, there being no just reason for delay of entry of final judgment.

**SO ORDERED.**

## APPENDIX A

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**

George A. Quevedo, Dale M. Strand, Sara J. Strand, Dawn I. Brett, John F. Lage, Gary R. Woempner, and All Others Similarly Situated, Plaintiffs,

v.

Marine Midland Automotive Financial Corporation, and Marine Midland Bank, N.A., Defendants.

CIV–91–0307A

Freedman–Harris Agency, Inc. and All Others Similarly Situated, Plaintiffs,

v.

Marine Midland Automotive Financial Corporation, and Marine Midland Bank, N.A., Defendants.

Civil Action No. 92–CIV–0421

## AGREEMENT OF SETTLEMENT

WHEREAS the undersigned plaintiffs (the "Class Plaintiffs") are maintaining two civil actions, which are currently pending in the United States District Court for the Western District of New York (the "Court"), entitled *Quevedo v. Marine Midland Automotive Financial Corp., et al.,* Civ–91–0307A and *Freedman–Harris Agency, Inc. v. Marine Midland Automotive Financial Corp., et al.,* 92–Civ–0421 on behalf of themselves and other persons similarly situated (the "Class Actions");

WHEREAS the complaints and amended complaints in the class actions allege that defendants Marine Midland Bank ("MMB"), successor by conversion to Marine Midland Bank, N.A., and Marine Midland Auto Lease Corp. ("MMALC"), sued as Marine Midland Automotive Financial Corporation ("MMAFC"), and/or divisions, affiliates and subsidiaries of those companies acted in violation of federal and/or state laws regarding leasing of motor vehicles;

WHEREAS the plaintiffs in each case have moved for certification of the cases as class actions;

WHEREAS the defendants have moved to dismiss the complaints in both actions;

WHEREAS the Class Plaintiffs and their attorneys have conducted an extensive investigation into the facts and issues raised by the Class Actions and have concluded that settlement on the terms set forth herein is in the best interest of Class Plaintiffs and the settlement classes as defined below;

WHEREAS defendants have denied and do deny all charges of wrongdoing of any kind whatsoever;

WHEREAS defendants, without admitting any of the allegations of the complaints and amended complaints or any liability whatsoever, have agreed to enter into this Agreement of Settlement ("Agreement") in order to reduce further expense, inconvenience and the distraction of burdensome and protracted litigation and trial and in order to obtain the releases, covenants, orders and final judgment contemplated by this Agreement and to put to rest with finality all claims that have been or that could have been asserted against defendants in the Class Action complaints and any amended complaints under any federal or state law;

NOW, THEREFORE, in consideration of the covenants and agreements herein set forth, it is agreed by and among the undersigned that the claims of the Class Plaintiffs and each member of the Settlement Classes defined below be settled and compromised with defendants on the following terms and conditions:

1. This Agreement is entered into among the undersigned to compromise and settle all claims that have been or could have been asserted against defendants in the Class Actions.

2. The parties hereby stipulate to the following two classes ("the Settlement Classes") for the purposes of effectuating this settlement agreement:

*Settlement Class A:*

All persons, corporations, and other entities who (1) entered into motor vehicle leases with Marine Midland Automotive Financial Corporation, Marine Midland Auto Lease Corp., Marine Midland Automotive Lease Corporation or any affiliated company (collectively "Marine"), (2) whose leases provided for payment to Marine of an "excess wear" charge based on the amount spent by Marine in excess of a stated figure, and (3) who returned their vehicles to Marine (other than upon "early termination") between January 1, 1988 and the date of preliminary approval of the proposed settlement. The affiliated companies are Jaguar Leasing Corp., Saab–Scania Financial Services Corp., Mazda American Credit, Mazda American Credit, Inc., Porsche Financial Services, Porsche Financial Services, Inc., and Saab–Scania Financial Services;

and

*Settlement Class B:*

All persons, corporations and other entities who leased a motor vehicle from Marine Midland Automotive Financial Corporation, Marine Midland Auto Lease Corp., or Marine Midland Automotive Lease Corporation or any affiliated company during the period from January 1, 1988 to the date of preliminary approval of the proposed settlement and who extended the term of such lease, or held the vehicle subject to such lease, beyond the original lease term and thereafter purchased the respective leased vehicle. The affiliated companies are: Jaguar Leasing Corp., Saab–Scania Financial Services Corp., Mazda American Credit, Mazda American Credit, Inc., Porsche Financial Services, Porsche Financial Services, Inc. and Saab–Scania Financial Services.

3. This settlement is entered into by Class Plaintiffs on behalf of the Settlement Classes.

4. The undersigned agree to recommend approval of this settlement by the Court and by all Class Plaintiffs and members of the Settlement Classes as being fair and reasonable and to undertake their best efforts, including all steps and efforts contemplated by this Agreement and any other steps and efforts which may become necessary by order of the Court or otherwise, to carry out this Agreement, unless counsel for Class Plaintiffs and counsel for defendants hereafter agree otherwise:

a. Promptly after the execution of this Agreement by counsel for Class Plaintiffs and counsel for defendants, Class Plaintiffs shall submit to the Court a motion for preliminary approval of the settlement contemplated by this Agreement (the "Settlement"), which motion shall be acceptable in form and substance to defendants and shall provide for the submission of a form of notice of the Settlement to be mailed to members of the Settlement Classes, which form shall also be acceptable to defendants;

b. In the event the Court preliminarily approves the Settlement, Class Plaintiffs shall mail to all members of the Settlement Classes notice of the Settlement, in a form approved by the Court; and

c. Within thirty days of the execution of this Agreement, defendants shall furnish plaintiffs with separate lists of the names and last known addresses of the members of the respective Settlement Classes.

5. This Agreement and the Settlement shall become final upon the occurrence of all of the following three events: (i) they are approved in all respects by the Court as required by Fed.R.Civ.P. 23(e), (ii) entry is made of a final judgment of dismissal with prejudice as to defendants against all Class Plaintiffs, and (iii) the time for appeal from the final judgment has expired or, if appealed, the final judgment has been affirmed in its entirety by the Court of last resort to which such an appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed

that, in determining the times for appeal, further appeal or review, the provisions of Rule 60 of Fed.R.Civ.P. and of All Writs Act, 28 U.S.C. § 1651, shall not be taken into account. In the event that the Court refuses to approve this Agreement and the Settlement or any material part hereof or the final judgment described in subpart (ii) of this paragraph is not entered or such final judgment is set aside on appeal, this Agreement in its entirety shall become null and void pursuant to paragraphs 16 and 17, unless the parties hereto promptly agree in writing to proceed with the Settlement as modified by the Court.

6. In full, complete and final settlement with defendants of all claims asserted by the Class Plaintiffs and the members of the Settlement Classes in the Class Actions, including but not limited to claims for damages, interest thereon, attorneys' fees, expenses and costs, defendants shall deliver by wire transfer the sum of two million four hundred and seventy thousand dollars ($2,470,000) (hereinafter the "Deposit") into a custodial interest-bearing account to be established and held by Irving M. Shuman, acting as escrow agent, entitled "Marine Midland Auto Leasing Litigation Settlement Fund" within three (3) business days of the date upon which this agreement becomes final pursuant to paragraph 5 above. In the event an appeal is taken which delays the date upon which the agreement becomes final beyond thirty (30) days following approval of the Settlement by the District Court, and any order approving the Settlement is affirmed on appeal, defendants shall increase the fund by an amount equal to the interest on $2,470,000.00 for each day from the date a notice of appeal is filed until the date the Settlement becomes final under paragraph 5. The interest shall be computed as if the Deposit had been deposited, as of the date the notice of appeal is filed, into a certificate of deposit having a term of one year and an interest rate equal to the average of top rates paid by major New York banks on primary new issues of negotiable certificates of deposit for such date, as published in the *Wall Street Journal*, with subsequent renewals of the same time period (but excluding any early withdrawal penalty). Wiring instructions for the payment of the settlement fund shall be provided in writing to counsel for defendant by Counsel for Class Plaintiffs within ten (10) days of an order by the District Court approving the settlement.

7. The Deposit and all interest thereon shall be referred to hereinafter as the "the Fund." Class Plaintiffs and the members of the Settlement Classes and their counsel shall look solely to the Fund for settlement and satisfaction of all claims against defendants that have been or could have been asserted by them arising out of the leasing of motor vehicles up to the effective date of the final judgment herein, including all claims for attorneys' fees.

8. The parties have agreed to retain Heffler & Co. to administer notice and subsequent claims. The scope of the duties of Heffler & Co. to provide these services is set forth on Exhibit A hereto. Defendants shall make available to Heffler & Co. such information and documents as are reasonably necessary for the performance of its services. In addition to providing class lists, defendants shall also be responsible for providing Heffler & Co. with the following:

(1) for each member of Settlement Class A so requesting in response to the notice, defendants will provide that class member's total termination liability initially assessed, actual termination liability paid, the amount of any security deposit retained by defendants, the amount of any excess wear allowance contained in the lease, and the excess wear charge initially claimed. If necessary, defendants will retrieve these lessees' individual files to provide the information; and

(2) a computation for each member of Settlement Class B of the difference between the purchase price quoted to each class member for his or her vehicle and what the price of the vehicle would have been had the quoted price been computed based on use of the constant yield method of depreciation during the period after the scheduled end of the lease term.

In addition to the Fund and their cooperation required under this Agreement, defendants shall be liable for up to three hundred and twenty-five thousand dollars for payment of the costs or expenses of Heffler & Co. relating to providing notice and/or administration of any claim or review process. All other or additional costs and expenses, and all attorneys' fees, are to be paid only out of the Fund.

9. Upon final approval of this Agreement and entry of the final judgment pursuant to paragraph 5: (1) the Class Action complaints and amended complaints shall be dismissed against defendants with prejudice and without costs to defendants on the terms agreed herein, and (ii) the undersigned shall jointly consent to an immediate final judgment under Fed.R.Civ.P. 54(b) dismissing the Class Actions and all claims that have been or that could have been asserted in the complaints and amended complaints against defendants, which dismissal shall be on the merits, with prejudice and without costs to defendants.

10. Subject only to the provisions of paragraph 12 hereof, the Class Plaintiffs and their counsel shall be reimbursed and indemnified out of the Fund for all expenses and costs of any kind incurred in connection with these actions, including any fees and expenses of Heffler & Co. in excess of $325,000. Defendants shall have no responsibility for paying any costs, expenses and fees (including attorneys' fees) of the Class Plaintiffs or their counsel beyond creation of the Fund and payment of the fees and expenses of Heffler & Co. up to $325,0000 for notice and administrative costs in accordance with paragraphs 8 and 15 hereof.

11. Defendants shall make available to Heffler & Co. the documents and computer data reasonably necessary to calculate and audit claims in an expeditious and economical manner as provided in the letter attached hereto as Exhibit A and to provide data specified in paragraphs 4(c) and 8.

12. No disbursement shall be made from the Fund without prior approval of the Court. Upon this Agreement and the Settlement becoming final, the Fund will be distributed in accordance with a plan of allocation and distribution to be submitted by Class Plaintiffs subject to approval by the Court, and disbursements from the Fund may be made to pay such administrative and/or litigation costs, attorneys' fees and other disbursements as the Court shall authorize.

13. Except as provided in paragraph 8 of this Agreement, no distribution of the Fund shall be made until all conditions contained in paragraph 5 hereof shall have been fulfilled.

14. In addition to the effect of any final judgment entered in these actions, upon approval of this Agreement as provided in paragraph 5 hereof, the Class Plaintiffs and members of the Settlement Classes and all of their respective officers, agents, employees, predecessors, successors, subsidiaries, affiliates and assigns shall be deemed (1) to have released any Released Claim against any Released Person (as those terms are defined below) and (2) to have covenanted and agreed that they shall be forever barred from instituting, assigning or prosecuting any Released Claim against any Released Person. As used herein, Released Claim means any claim, demand, action, cause of action or liability of whatever nature, whether known or unknown, at law or equity, which any Class Plaintiff or member of the Settlement Classes ever had, now has or could have arising from or relating in any manner to such class member's motor vehicle lease with MMAFC, MMALC or any of the entities listed in paragraph 2 of this Agreement, to the termination of such lease, or to the assessment, collection, or attempted collection of any amounts charged, paid or applied in connection with such lease. Released Claim also includes, but is not limited to, any claim which could have been asserted arising out of or related to any of the facts alleged in the Class Action complaints or amended complaints, whether based on federal or state law. As used herein, Released Person means MMB, MMAFC, MMALC, any of the entities listed in paragraph 2 of this agreement, or any of their past or present officers, directors, agents, employees, affiliates, groups, predecessors, shareholders, subsidiaries, divisions, parents, successors,

assigns, indemnities and legal representatives; together with any appraiser, auctioneer, automobile manufacturer, distributor or dealer, repair shop, collection agency or debt collector involved in any manner with such class member's motor vehicle lease; provided, however, that the foregoing release shall not apply to any direct or indirect claim for personal injury or property damage arising out of the design, operation, or maintenance of the leased vehicle. The final judgment entered pursuant to paragraph 5 of this Agreement shall provide that the Released Persons shall be released and discharged from any and all liability in respect of any Released Claim by any Class Plaintiff or by any member of the Settlement Classes who does not elect to be excluded from the Class Actions and the settlement thereof in the manner provided in the Notice of Proposed Settlement.

15. Notice shall be directed to the members of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure in such form as the Court may approve. Defendants further agree to pay the costs of notice of this Settlement to Class members pursuant to Fed.R.Civ.P. 23(c) to the extent such costs are included in the additional sum provided in paragraph 8 herein.

16. At their sole discretion, defendants may elect to terminate this Agreement if, after the date fixed by the Court for the members of the settlement classes to exclude themselves pursuant to F.R.Civ.P. 23, a class member or members of the Settlement Classes have elected to exclude themselves and defendants believe that such exclusion constitutes a threat of further substantial litigation that is not already pending, specifically the action entitled, *Tapper v. Mazda American Credit et al.,* Civil No. 93–5727 (E.D.Pa.). The fact that a class member that has elected to exclude itself may be a member of the putative class alleged in such action shall not preclude defendants' right to terminate under this provision. Such option shall be exercised, if at all, within fifteen (15) days after Heffler & Co. has provided defendants with a complete list of those members of the Settlement Classes who have elected

to exclude themselves from the Class Actions and from the settlement, by service of written notice of the election to withdraw upon Irving M. Shuman and Howard I. Langer with a copy filed with the Court with Proof of Service. In the event defendants exercise this option, this Agreement shall be treated as if the Court did not give final approval to it.

17. If this Settlement is not finally approved by the Court and consummated as provided herein, or if a final judgment is not entered as provided in paragraph 5 and 9 hereof, or if such final judgment is vacated, reversed or modified upon appeal, this Agreement shall be of no force or effect unless the undersigned parties agree in writing to proceed with the Settlement as and if modified by the courts, and this Agreement and the Settlement and all negotiations and proceedings connected therewith shall be without prejudice to the rights of any party hereto, shall not be deemed or construed to be an admission by any party of any fact or matter and shall not be used in any way in these actions or in any other action or proceeding.

18. In the event that this Settlement does not become final and binding for any reason, Defendants shall remain responsible for the fees and expenses of Heffler & Co. previously expended for notice to the classes designated in paragraph 2 above, up to a maximum of $325,000.00.

19. The Court shall retain jurisdiction over the interpretation, effectuation and implementation of this Agreement.

20. This Agreement shall become effective upon its execution by all the undersigned and cannot be amended or modified without the agreement in writing of all the undersigned.

21. This Agreement has been negotiated and entered into for settlement purposes only and does not constitute any evidence against or admission of liability by defendants with respect to any claim that has been

or could have been asserted against defendants.

22. The undersigned attorneys for the Class Plaintiffs and members of the class represent that they are fully authorized to enter into this Agreement on behalf of the Class, subject to the approval of the Court as described herein, and the undersigned counsel for defendants represent that they are fully authorized to enter into this Agreement on behalf of defendants.

23. This Agreement shall be governed by federal common law or the laws of the State of New York, whichever is applicable to the issues involved.

DATED: February 1, 1994

GROSS, SHUMAN, BRIZDLE & GIL-FILLAN, P.C.

BY: /s/ Irving M. Shuman

Irving M. Shuman, Esquire

600 Lafayette Court

465 Main Street

Buffalo, NY 14203–1787

Phone: (716) 854–4300

and

BERGER & MONTAGUE, P.C.

BY: /s/ Howard Langer

Howard Langer

1622 Locust Street

Philadelphia, PA 19103

Phone: (215) 875–3044

On Behalf of All Plaintiffs

PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER

BY: /s/ Paul K. Stecker

Paul K. Stecker, Esquire

3400 Marine Midland Center

Buffalo, NY 14203

Phone: (716) 847–8400

On Behalf of All Defendants

HEFFLER & COMPANY

CERTIFIED PUBLIC ACCOUNTANTS

SUITE 800

1515 MARKET STREET

PHILADELPHIA, PA 19102

January 10, 1994

Howard I. Langer, Esquire

Berger & Montague, P.C.

1622 Locust Street

Philadelphia, PA 19103

Irving Schuman, Esquire

Gross Schuman Brizdle & Gilfilland, P.C.

600 Lafayette Court

465 Main Street

Buffalo, NY 14203

Re: *Marine Midland Auto Leases Litigation*

Dear Howard and Irv:

Pursuant to Howard's request and that the change in the number of potential Class Members has increased from approximately 25,000 Class Members to approximately 45,-000 Class Members, we are updating our previously submitted proposal dated November 5, 1993.

Based on the assumption that the only change to the claims administration is the potential increase in Class Members, which would obviously effect our time and certain third party costs, the only change to our previous proposal will be our total billing amount. We now anticipate that the total billing, including third party costs, will not exceed $325,000.00.

We appreciate the opportunity to submit this supplemental letter to our proposal and will be glad to furnish any additional information you require.

Respectfully submitted,
HEFFLER & COMPANY
Michael T. Bancroft

MTB:pcb

mid/hlml–10

Approved:

By: ———————————

Date: ———————————

HEFFLER & COMPANY

CERTIFIED PUBLIC ACCOUNTANTS

SUITE 800

1515 MARKET STREET

PHILADELPHIA PA 19102

November 5, 1993

Howard I. Langer, Esquire

Berger & Montague, P.C.

1622 Locust Street

Philadelphia, PA 19103

Irving Schuman, Esquire

Gross Schuman Brizdle & Gilfilland, P.C.

600 Lafayette Court

465 Main Street

Buffalo, NY 14203

Re: *Marine Midland Auto
Leases Litigation*

Gentlemen:

At your request, we are pleased to submit our proposal for services to be rendered in the Marine Midland Auto Leases Litigation.

## I. *BACKGROUND OF HEFFLER & COMPANY*

Heffler & Company is a Certified Public Accounting firm, located in Center City Philadelphia, Pennsylvania with over 60 professional staff members including 9 partners. Our firm was founded in 1942, and we specialize in investigative accounting, administration of Class Actions, tax, health care and financial accounting. We have been retained to perform investigations and to administer class action settlements for numerous United States District Courts and governmental agencies throughout the country. We have been handling the administration of antitrust cases since 1960 and handling the administration of securities class actions since 1974. Over the past 32 years, we have been engaged as administrator in approximately 200 matters (see attached schedule). These matters have ranged in size from several hundred proof of claim forms to matters that involve in excess of 1,000,000 proof of claim forms with mailings to potential class members in excess of 10,000,000 names.

During 1975 thru 1977, we were hired to administer the claims process in the Penn Central Securities Litigation. In excess of 67,000 proof of claim forms were filed with claimants having to list all of their stock transactions in the Penn Central Company from the first date that Penn Central sold stock. Many claimants had multiple transactions with some proof of claims being over 3 inches thick. Each transaction was verified and the transactions were sorted into 5 categories with each category receiving a different weight. We verified the accuracy of each claim and mailed checks to approved claimants within 18 months of the filing deadline. There was not a single appeal filed with the Court.

In 1975, we were engaged as Administrator of the Caesars Palace Securities Action. Over 13,000 proof of claim forms were filed with approximately 8,000 claimants receiving distribution checks. There were 15 categories and 8 weights involved in the calculation of the losses. No claimant received a distribution if their proportionate share of the settlement was less than $5.00. Checks were mailed within one year of the filing deadline.

In 1982, we were engaged as Administrator of the Three Mile Island Class Action where in excess of 15,000 individuals and entities filed proof of claim forms requesting damages as a result of the Three Mile Island Nuclear Accident. We recommended guidelines to Class Counsel to be used in evaluating losses as a result of business interruption and costs incurred by persons fleeing the area immediately after the accident. These recommenda-

tions were not only instituted but they were praised by Counsel and the Court. We also received a commendation from the Judge for the professional way we handled class members in such an emotional case that was under constant scrutiny by the news media. Every claim was settled and not one claimant appealed their award.

During 1983 & 1984, Heffler & Company was engaged as Settlement Administrator in the General Public Utilities Securities Litigation. In excess of 65,000 claims were filed and over 56,000 claimants received checks and shares of stock. Claimants could have made purchases of securities through the open market, stock purchase plan, dividend reinvestment plan, TRAESOP plan, subscription offerings and/or payroll deduction plan. Recommendations were made to Counsel concerning ways that the claims process could be streamlined to avoid unnecessary expense in the administration process. These recommendations were accepted by both Counsel for the Plaintiffs and Counsel for the Defendants. Again, there was not a single claimant who requested a hearing before the Court.

In 1985, we were engaged to administer the Bogosian, et al. v. Gulf et al. Class Action. Over 24,000 claimants filed claims. Notices were mailed to over 100,000 potential claimants and in addition notice was published nationally in trade journals distributed to all gas station lessee dealers. After an analysis of all the claims which included detailed audits on large claims, payments were made to over 18,000 claimants.

In 1987, we were engaged to administer the First Jersey Securities Litigation. Over 85,500 proof of claim forms were filed by claimants. There were 43 different securities to this action and five separate classes with four different settlements. Most claimants had multiple transactions since the action revolved around brokers churning clients' accounts. Over 73,000 checks were mailed to approved claimants. Every claim was settled and there were no appeals to the Court.

In 1990, we were appointed Administrator in the In re Ivan F. Boesky Securities Litigation to handle both the notification and claims administration. We reviewed the Daily Transaction Reconciliation Clearing Sheets for 15 class securities to identify the brokerage firms that cleared transactions in these 15 securities during the class period. We contacted the firms we identified and requested they provide us with the names and addresses of their beneficial and record traders. We compiled a mailing list of over 81,000 entities based on the information supplied, and supervised the mailing of Notice(s) to these entities. Approximately 11,500 proof of claims have been filed in this matter that covers six different securities and six different time periods.

During 1990, we were hired as Administrator in the David S. Haas et al. v. Philadelphia Department of Revenue and City of Philadelphia Class Action. This action resulted from overcharged transfer tax that the City of Philadelphia assessed on sales of real estate within the City. We generated the list of class members by reviewing deeds obtained from the City of Philadelphia and various title companies. To date we have reviewed over 24,000 deeds and identified 35,000 claimants representing almost 98% of the Class. Funds have been distributed to approved claimants.

Our staff at Heffler & Company is trained to administer class action settlements. We assure a quality product by:

Creating a manual for each matter which is distributed to the staff working on the assignment. This manual gives the pertinent information for each case. This assures that every member of the team understands all of the parameters of the case.

Having a partner constantly review the work of each staff member to assure that each matter is proceeding in a timely fashion and that all of the guidelines are being followed.

Having all of the work done in our office, including the data entry of claim information into our computers.

Using our experience as Certified Public Accountants to build into our procedures checks and balances that assure the accuracy of all our computations.

The experience that we have gained over the past 32 years, plus our commitment to being quality Class Action Administrators has enabled us to have experienced personnel who are capable of:

Processing thousands of inquiries on a weekly basis through the use of a series of form letters that we have developed over the past 18 years.

Answering all incoming telephone calls with courteous accurate responses and maintaining a record of each call for future reference.

Performing data entry of the claim information into our own computers. These computers have enough memory to store the claim information for in excess of 500,-000 claimants.

Calculating thousands of claims on a daily basis, assuring that each assignment is completed in a reasonable amount of time.

## II. *PROPOSED PROCEDURES*

Based on our discussions and a review of the documents you supplied we feel that our procedures in the Marine Midland Auto Leases Litigation should be as follows:

A. *Notification Process:*

1. Create a mailing list of potential class members from data to be supplied by defendant.

2. Remove all duplicate entries.

3. Produce pressure sensitive labels for mailing.

4. Assist in the preparation and printing of the Notice and Proof of Claim forms (the "Notice") to be sent to potential class members.

5. Affix mailing labels to the Notice and deliver to post office.

6. Assist in the preparation and publication of a short form Notice in any publication(s) designated in the Settlement papers.

7. Follow-up on Notices returned as undeliverable.

8. Prepare affidavit for Court regarding the notices and publication.

9. Process requests for exclusion as instructed, if applicable.

B. *Calculate Claims:*

1. Pick up mail at U.S. Post Office.

2. Sort mail into returned mail, requests for Notices, requests for exclusion, general correspondence and Proofs of Claim.

3. Set aside returned mail.

4. Send Notices to all persons who request them.

5. Process requests for exclusion as instructed, if applicable.

6. Answer all general correspondence.

7. Review Proofs of Claim for completeness and to verify whether they meet the criteria of being within the Classes.

8. Review Proofs of Claim from Freedman–Harris class members to verify that they have stated the following:

A. total end of term liability as initially claimed by defendants;

B. total end of term liability actually paid; and

C. total excess wear and tear charge claimed by defendants.

9. Create data base of claimant information for all claims received in each class.

10. Submit listing of the information obtained from the Proof of Claim forms in both cases to Marine Midland.

11. Compare Proofs of Claim from Quevedo class members with the records supplied by Marine Midland to determine the actual amount of the claim.

12. For those Freedman–Harris class members who request that we obtain the end of term liability and excess wear and tear charges from the defendant, their claim will be calculated based on the information furnished to us by Marine Midland Bank, N.A.

13. Locate all duplicate claim filings within each class of claims.

14. Calculate actual amount of claim for Freedman–Harris class members based on the guidelines in the "Plan of Distribution."

15. Send letters to claimants who are deficient and/or rejected.

16. Process responses to all letters.

17. Send follow-up letters when required.

18. Send second letters rejecting any claim with unresolved deficiencies, if required.

C. *Distribution Services:*

1. Audit the Settlement Funds.

2. Calculate the distribution of cash due each claimant in both classes.

3. Prepare affidavit for Court regarding claims processing procedures and proposed distribution.

4. Print checks for claimants in both classes.

5. Mail checks to claimants.

| Partners | $125.00 per hour |
| Managers | 75.00 per hour |
| Senior Accountants and Computer Programmers | 55.00 per hour |
| Associate Accountants | 37.50 per hour |
| Clerical & Data Entry Personnel | 23.00 per hour |

D. *Post Distribution Services:*

1. If a check is returned as undeliverable attempt to locate a new address.

2. Reissue checks when necessary.

3. Process all correspondence for a period of 12 months following distribution.

4. Reconcile checking account statements for a period of 12 months following distribution.

5. Answer telephone calls from claimants.

6. Prepare final accounting for counsel.

E. *Tax Service:*

1. Prepare all submissions and tax returns required by the Internal Revenue Service under code section 468(b).

### III. *FEES AND COSTS*

Our billing for the above services will be based on our normal hourly rates, as follows:

In addition, we will bill for out-of-pocket expenses, such as, but not limited to printing of Notice and Proof of Claim, publication of short form Notice, storage, travel, telephone, postage, locator services, Freedom of Information research, stationery, reproduction, printing of checks, etc.

We anticipate that the total billing, including third party costs, will not exceed $200,000. Billing for our services and costs, up to $200,000, will be on a monthly basis and the invoices will be sent to:

Marine Midland Bank, N.A.
c/o Paul Stecker, Esquire
Phillips, Lythe, Hitchcock, Blaine & Huber
3400 Marine Midland Center
Buffalo, NY 14203

with copies being sent to Howard I. Langer, Esquire and Irving Schuman, Esquire.

We appreciate the opportunity to submit this proposal, and will be glad to furnish any additional information you require.

Respectfully submitted,
HEFFLER & COMPANY

Approved:

By: _____

Date: _____

### *HEFFLER & COMPANY CASES WE HAVE HANDLED OR ARE PRESENTLY WORKING ON*

Securities Class Action Suits:

AIA Industries, Inc.

Aldon Industries, Inc.

AM International, Inc.

American Carriers, Inc.

American Integrity Corp.

American Medical Buildings

American Savings & Loan Association of Florida

Ames Department Stores, Inc.

Ampex

Amre, Inc.

Apache Corporation

Apollo

Applied Digital Data Systems, Inc.

Arizona Public Service

Atlantic Financial Federal

Atlantic Dept. Stores, Inc.

Avant–Garde Computing, Inc.

AZL

Beverly Enterprises, Inc.

Blinder Robinson & Co., Inc.

Boardroom Business Products, Inc.

Braniff, Inc.

Brickley v. EPIC

Burroughs Corporation

Caesars World, Inc.

California Life Corporation

Calton, Inc.

Centocor, Inc./Tocor II, Inc.

Charter Company

Cincinnati Gas & Electric Company

CityFed

Coleco

Commodore International Limited

Computer Devices, Inc.

Computer Input Services, Inc.

Crazy Eddie, Inc.

Cullinet Software, Inc.

Data Access Corporation

Data General Corporation

Digital Equipment Corporation

Documation

E.F. Hutton Group, Inc.

Eliot Savings Bank

Embassy Suites

Endo–Lasa, Inc.

Engelhard

Entourage International, Inc.

Equitorial Communications

Falcon Cable Systems

Farmers Group Stock Options

Fiberboard

First City Bancorporation

First Fidelity Bancorporation

First Jersey Securities, Inc.

First Service Bank for Savings

Flagship Financial

Food Fair

Fossett Corp. et al. v. Marvin Gerhart et al.

French v. Pacific Nuclear Systems, et al.

Fretter, Inc.

Funds of Letters, Inc. (New America Fund)

General Host Corporation

General Public Utilities

Gilbert v. Bache

Gillette

Golden v. Shulman, et al. (Bolar Pharmaceutical)

Goodyear Tire & Rubber Co.

Great American Mortgage Investors

Healthdyne

Heritage Bancorp, Inc.

Home Shopping Network Action I

Home Shopping Network Action II

Information Displays, Inc.

Interfirst Corporation

IGI

Iomega Corporation

ITT Corporation

Katy Industries

Kay Jewelers, Inc.

Kendrick v. Atcor, Inc.

Kirschner Medical Corporation

La Petite Academy

Lomas Financial Corporation

Lomas & Nettleton Mortgage Investors

Magic Marker

Mattel

MBI Business Centers, Inc.

MCorp.

Melridge, Inc.

Meridian Bancorp, Inc.

Merrimack Bancorp, Inc.

Microcom, Inc.

Micropolis Corporation

Midwestern Companies, Inc.

Minnetonka

Mortgage Realty Trust

National Media Corp.

Newbridge Networks Corporation

Norris Oil Co.

Nutmeg Industries, Inc.

Nutri/Systems, Inc.

One Bancorp

OMNI

ORFA Corporation of America, Inc.

ORS Automation Systems

Osrow Corporation

Pace Membership Warehouse, Inc.

Pacific Nuclear Systems, Inc.

Pancoastal

Pannill Knitting Company, Inc.

Paradyne

Pay N' Save

Penn Central Co.

Peoples Savings Bank

Perception Technology Corporation

Philadelphia Savings Fund Society

Poughkeepsie Savings Bank/FSB

Public Service Company of New Mexico

Quinoco Limited Partnerships

RAC Mortgage Investment Corp.

Residential Resources Mortgage Investments Corp.

Revco D.S., Inc. or ANAC Holding Corporation

Richard J. Dennis & Company

Richton International Corporation

RJR Nabisco, Inc.

Roper Corporation

Rospatch Corporation (now known as Ameriwood Industries International Corporation)

Sanders

Sanifill, Inc.

Seafirst Corporation

Sequoia Systems, Inc.

Sierra Health Services, Inc.

Singer Company

SmithKline Beckman Corporation

Snyder v. Oneok, Inc.

Spectra Pharmaceutical Corp.

Spectran Corporation

Star States Corporation

Statewide Bancorp

Systems & Computer Technology Corporation

Telesphere International, Inc.

Tucson Electric Power Company

UCI Medical Affiliates, Inc.

Union Fidelity Corporation

U.S. Bioscience, Inc.

U.S. Healthcare, Inc.

Verbatim Corporation

Wall to Wall Sound and Video, Inc.

Waste Management

Wedtech Corp.

Western Union

Windmere Corporation

Zayre Corporation

Anti–Trust Cases:

Airlines

Anthracite Coal

Antibiotics

Architectural Grade Hinges

Armored Car

Bakery Products

Brass Fittings

Brass Mill Tube & Pipe

Burglar Alarms

Cast Iron Pipe

Chain Link Fence

Chemical

Clozapine

Concrete Pipe

D.C. Soft Drinks

Electrical Products

Gasoline

General Adjustment Bureau, Inc.

Glassine & Greaseproof Paper

Gypsum Wallboard

Hospital Beds

Independent Gasoline

Library Books

Oil Task Force

New York Beer

PASA

Pittsburgh Asphalt

Plumbing Fixtures

Rock Salt

Rope Industries

South Florida Soft Drinks

Steel Wheels

Tickets

Uniform Rentals

Water Meters

Women's Clothing

Other Class Actions:

Alcolac, Inc.

Ashland Oil Spill

Boesky Disgorgement Fund

Bogosian et al. v. Gulf et al.

Brunt vs. The Charter Company

Chase Maryland Rail Collision

D'Amico v. Conrail

David S. Haas, et al. v. Philadelphia Department of Revenue

Drexel Disgorgement Fund

Giardiasis, Etc.

Infant Formula

Jennings vs. Mobil

Master, Mates & Pilots Pension Plan & IRAP

Presidential Life Insurance Company v. Milken, et al. Global Class Action

Rohm & Haas Company Litigation

Rosenfeld v. Collins & Aikman Corp.

Simmons Company Employee Stock Ownership Plan

Stripper Well Exemption Litigation

Three Mile Island

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

**In re Marine Midland Motor Vehicle Leasing Litigation**

92–CIV–0421

Filed March 18, 1994.

*ADDENDUM TO THE SETTLEMENT AGREEMENT*

Pursuant to paragraph 20 of the Settlement Agreement of February 1, 1994, the parties hereby modify and amend the Settlement Agreement by adding the following provisions at the end of paragraph 14:

"The final judgment shall also provide that the Class Plaintiffs and members of the Settlement Classes who do not elect to be excluded in the specified manner shall be enjoined from commencing or continuing any action or other proceeding against any Released Person seeking recovery on any Released Claim.

In addition to the effect of any final judgment entered in these actions, upon approval of this Agreement as provided in paragraph 5 hereof, MMB, MMAFC, MMALC and all of their respective officers, agents, employees, predecessors, subsidiaries, affiliates and assigns shall be deemed (1) to have released any claim for any excess wear charges allegedly owed by any Class Plaintiff and any member of the Settlement Classes who has not elected to be excluded in the specified manner and (2) to have covenanted and agreed that they shall be forever barred from instituting, assigning or prosecuting any claim for excess wear charges against any Class Plaintiff and any member of the Settlement Classes who has not elected to be excluded in the specified manner. As used herein, 'claim for excess wear charges' means any demand, action or cause of action of whatever nature, whether known or unknown, at law or equity, which MMB, MMAFC or MMALC ever had, now has or could have relating to any costs actually incurred, or estimated to be necessary, to place a returned leased vehicle in good operating order and appearance or to make the vehicle saleable at wholesale without deduction for

the condition of the vehicle. The final judgment entered pursuant to paragraph 5 of this Agreement shall provide that the Class Plaintiff and all members of the Settlement Classes who have not elected to be excluded in the specified manner shall be released and discharged from any and all liability in respect of any claim for excess wear charges by MMB, MMAFC or MMALC.

MMB, MMAFC and MMALC also agree to desist from any effort to collect excess wear charges from any Class Plaintiff or any member of the Settlement Classes who has not requested to be excluded in the specified manner, and the final judgment will provide that MMB, MMAFC and MMALC are enjoined from commencing or continuing any action or other proceeding to recover excess wear charges from any such person.

The foregoing applies solely to excess wear charges and does not relieve any Class Plaintiff or any member of the Settlement Classes for liability for charges other than excess wear charges."

The undersigned represent that they are authorized to enter into this Addendum To The Settlement Agreement on behalf of their respective clients.

DATED: 3/19/94

/s/ Irving M. Shuman

Irving M. Shuman
GROSS, SHUMAN, BRIZDLE & GILFILLAN, P.C.
465 Main Street, Suite 600
Buffalo, NY 14203-1787

DATED: 3/19/94

—and—

/s/ Howard Langer

Howard Langer
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Counsel for All Plaintiffs

—and—

DATED: 3/18/94

/s/ Paul K. Stecker

Paul K. Stecker

PHILLIPS, LYTLE, HITCHCOCK, BLAINE & HUBER
3400 Marine Midland Center
Buffalo, New York 14203
Counsel for All Defendants

## APPENDIX B

### UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

**In re Marine Midland Motor Vehicle Leasing Litigation**

92–CIV–0421

Filed. March 21, 1994.

### PLAN OF DISTRIBUTION

The settlement fund remaining after deduction of costs and attorneys' fees shall be maintained as a single fund (the "Net Fund") to be allocated pro-rata among claimants in both classes under the following scheme.

A. Claims of members of sub-class "A" (the excess-wear sub-class) defined in the Order of February 10, 1994, who file verified claim forms shall be calculated as follows.

The actual claim will be calculated as the lesser of (a) the excess wear charge initially assessed without regard to any amount permitted by the contract, or, (b) the amount actually paid at the end of the term including any security deposit retained by the defendants, multiplied by the percentage of the total termination liability initially assessed that was actually paid by the class members, including any portion of the security deposit retained by defendants. For example, a person who was initially assessed excess wear of one hundred dollars ($100.00) and paid, including the security deposit, the full amount of the termination liability initially assessed will have a claim of one hundred dollars ($100.00). A person who was initially assessed excess wear of one hundred dollars ($100.00) but ultimately only paid, including the security deposit, half of the total termination liability will have a claim of fifty dollars ($50.00). The claims of persons who returned their vehicles after September 1, 1992 and in response to a letter from defendants paid a reduced excess wear charge will

be further reduced by an additional fifty-percent.

A member of sub-class "A" may request that the information necessary to file a claim be furnished to him, however, in such case the class member's claim will be reduced by ten percent.

"Total termination liability" as used above means the total of all charges assessed against the lessee at the end of the lease term net of any sum representing allowance for wear specified in the lease.

The sum calculated by this method will constitute the class member's approved claim in determining the class member's pro-rata share in the fund.

**B.** Claims of members of sub-class "B" (the purchaser sub-class) defined in the Order of February 10, 1994, who file verified claim forms shall be calculated as follows.

Each class members' claim will be the difference between the purchase price for the vehicle as quoted by defendants at the conclusion of the extension or holdover period and the purchase price as it would have been calculated had the method of depreciation described in the lease been used at all times.

This sum will constitute the class member's approved claim in determining the class member's pro-rata share in the fund.

**C.** After resolution of all questions, if any, concerning the claims, a percentage shall be calculated for each class member who has filed a valid claim, which percentage shall be determined by dividing the dollar amount of the individual claimant's valid claim by the aggregate dollar amount of all valid claims. This percentage shall then be multiplied by the Settlement Amount (plus any additions thereto) less approved attorneys' fees, costs and expenses to determine each claimant's share of the net Settlement Amount.

It is anticipated that, subject to Court approval, each valid claimant's share will be paid by a check representing the claimant's pro-rata share.

DATED: <u>3/21/94</u>

Respectfully submitted,

GROSS, SHUMAN, BRIZDLE & GIL-FILLAN, P.C.

BY: /s/ <u>Irving M. Shuman</u>
    Irving M. Shuman, Esquire
    465 Main Street, Suite 600
    Buffalo, NY 14203–1787
    Phone: (716) 854–4300
    and

BERGER & MONTAGUE, P.C.

BY: /s/ <u>Howard Langer</u>
    Howard Langer
    1622 Locust Street
    Philadelphia, PA 19103
    Phone: (215) 875–3044

On Behalf of All Plaintiffs

## *APPENDIX C*

| ....FIRSTNAME /MI/LASTNAME.. | ..SECOND NAME.. | ....STREET ADDRESS.... | ....CITY, STATE ZIP.... |
|---|---|---|---|
| Kim T. Alleman | | 140 Pilgrim Drive | Sewickley, PA 15143 |
| Patrick M. Arnold | | 323 Sombraro Beach Road | Marathon, FL 33050 |
| Rick Bartholomew | | 2195 East Avenue | Hayward, CA 94541 |
| Sirag A. Boghosian | | 594 35th Street | Manhattan Beach, CA 902 |
| John E. Bradley | | 13610 Tosca Lane | Houston, TX 77079 |
| Linda T. Brooks | | 33694 Pistol Court | Fremont, CA 94555 |
| Lara L. Buglio | | 95 Yare Terrace | Livingston, NJ 07039 |
| William J. Cade | | Seven Palms, SCR # 73 Box 28050 | Pahrump, NV 89041 |
| John L. Chelson | | 5136 Carol Drive | Torrance, CA 90505 |
| Thomas M. Comerford | | 4412 St. Andrews Court | Murrells Inlet, SC 2957 |
| Allison Costner–Burrell | | 175 Windbbiff Court | Clover, SC 29710 |
| Anthony DAliso | | 35 Christine Court | Stormville, NY 12582 |
| *Dale Davis | | 3236 Clymer Drive | Plano, TX 75025 |
| Ronald L. Dion | | 3563 Sohirra Street | San Diego, CA 92154 |
| Gary Kohito | | P.O. Box 5578 | Riverside, CA 92517 |
| Evan V. Kenwyk | | 10972 SW 82 Avenue | Ocala, FL 34481 |
| Dallas J. Fields and | Esther J. Fields | 3133 East 27th Street | Tucson, AZ 85711 |
| James P. Frey and | Kristine Frey | 317 4th Avenue North | Greybull, WY 82426 |
| Graphics Group, Inc. | | 1201 North Barsten Way | Anaheim, CA 92806 |
| William S. Gross | | 301 S. Rock Road # 59 | Darby, KS 67037 |
| Gloria Hall | | 29824 Matthew Drive | Westland, MI 48185 |
| Denise L. Hornberger | | 23 Evans Street | Hamburg, NY 14075 |

440

| ....FIRSTNAME /MI/LASTNAME.. | ..SECOND NAME.. | ....STREET ADDRESS.... | ....CITY, STATE ZIP.... |
|---|---|---|---|
| Robert A. Hubbard | | 20 Pemberton Place | Laguna Miguel, CA 92677 |
| Patrick A. Knight | Mary M. Knight | 2114 Quinton Avenue | N. Las Vegas, NV 89030 |
| Peter J. Kuszozak | | 1302 Stony Point Road | Grand Island, NY 14072 |
| William E. Ladd and | Margaret Ladd | 1235 Via Rancho Parkway | Escondido, CA 92029 |
| Elizabeth Levy | | 45 Bochstein Drive | Aberdeen, NJ 07747 |
| William L. Malinski | | 13400 S.E. 243rd Place | Kent, WA 98042 |
| Richard B. McCarthy and | Dorothy R. McCarthy | 6 Basty Court | Warren, PA 16365 |
| Moen Equities, Inc. d/b/a Alphagraphics | c/o Pabel, Davis & Hill, P.C. | 3150 2 Houston Ctr, 909 Fannin | Houston, TX 77010 |
| James L. Mueller and | Betty J. Mueller | 16022 Caminito de Linda | San Diego, CA 92128 |
| Harold W. Myers | | 525 Park Boulevard, Apt. # 152 | Ogdan, UT 84401 |
| John T. Nelson | | 768 W. Yale Street | Ontario, CA 91762 |
| Edward E. Placke | | 2926 N. 84th Street | Kansas City, KS 66109 |
| L.R. Plageman | | 6783 Mans Lane | Cincinnati, OH 45233 |
| Berneita R. Sarade | | 209 E. South Oakland Avenue | Pasadena, CA 91101 |
| Dale Schmidtka | | Box 453 West Road | Oneida, NY 13421 |
| Heins Peter Shaeffer and | Deborah Lynn Shaeffer | 2341 Radio Avenue | San Jose, CA 95125 |
| Ronald Siler | | 1020 W. Altdena | Royal Oak, MI 48067 |
| Stephen R. Smith | | 1158 Dutch Hollow Drive | Chesterfield, MO 63017 |
| Graham A. Treadway and | Phyliss E. Treadway | 15111 Pipe Line Avenue # 248 | Chino Hills, CA 91709 |
| Robert G. Troutman | | 591 Cross Creek Circle | Sebastian, FL 32958 |
| Robert L. Trowbridge | | 2685 S. Dayton Way # 213 | Denver, CO 80231 |
| Donna Waltus | | 3502 S. Mason Ave., # 6–i | Tacoma, WA 98409 |
| Lewis Wilson | | 75 Poplar Street 1E | Brooklyn, NY 11201 |
| John R. Windsor | Joanne Windsor | 22004 S.E. Fourth Street | Redmond, WA 99053 |