19 F.3d 1306
 Fed. Sec. L. Rep. P 98,138
CLASS PLAINTIFFS; Chemical Bank, in its representative
capacity as Trustee for Bondholders, Plaintiffs,
and
Continental Assurance Company; et al., Plaintiffs-Appellees,
v.
JAFFE & SCHLESINGER, P.A.; Ginsburg, Feldman & Bress;
Ferguson & Burdell; Weinstein, Hacker, Yost,
Berry & Mathews, Appellants,
v.
CITY OF SEATTLE; Oregon Public Entities, Benton Rural
Electric Association, Washington; Washington Public Power
Supply System; R.W. Beck and Associates; Ebasco Services
Incorporated; United Engineers & Constructors, Inc.;
Director Defendants, Participants' Committee
Defendants; Public Utility District No. 1, of Klickitat
County; United States of America, on behalf of itself and
its agency, The Bonneville Power Administration; State of
Washington; Bonneville Power Administration, Defendants-Appellees.
 No. 91-16679.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 14, 1993.
March 23, 1994.
 
 Robert H. Jaffe, Springfield, NJ, for appellants.
 Ann Acker, Chapman and Cutler, Chicago, IL, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before: NORRIS, WIGGINS, and LEAVY, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this companion case to Nos. 91-16669, 91-16685, and 91-16687, 19 F.3d 1291 (9th Cir.1994), decided on this day, the appellants, Jaffe & Schlesinger, P.A., Ginsburg, Feldman & Bress, Ferguson & Burdell and Weinstein, Hacker, Yost, Berry & Mathews (collectively known as the "Haberman counsel"), appeal the district court's denial of their fee and expense application for work done in state court litigation related to the Washington Public Power Supply System's ("WPPSS") $2.25 billion bond default. Haberman counsel represented individual and institutional bond purchasers in Haberman v. Washington Pub. Power Supply Sys., 109 Wash.2d 107, 744 P.2d 1032 (1987) as retained counsel.
 
 
 2
 Haberman counsel agreed with the class action plaintiffs that Haberman counsel would seek an award of attorneys' fees and reimbursement of expenses incurred out of the settlement fund created for Class Plaintiffs in the federal litigation ("MDL 551"). In exchange for the right to apply for fees and expenses out of the settlement fund, Haberman counsel agreed to waive the contingent fee arrangements made part of retainer agreements entered into with their nearly 300 individual and institutional investor clients and to reimburse their clients for the litigation fees advanced out of such fee award.
 
 
 3
 The Haberman action was never part of the MDL 551 action, but instead was parallel litigation. By its terms, however, the settlement of MDL 551 also resolved the Haberman litigation. Haberman counsel sought remuneration totalling $2,091,015.20 out of the MDL 551 settlement fund, arguing that their efforts in the state proceedings conferred benefits on the class.
 
 
 4
 The district court described the benefits asserted by Haberman counsel as follows:
 
 
 5
 (a) Their activities eliminated any potential for res judicata or collateral estoppel defenses that might be raised as a result of the Washington State Supreme Court's decision in Chemical Bank v. Washington Public Power Supply System ("Chemical Bank II "), 102 Wash.2d 874, 691 P.2d 524 (1984), cert. den Haberman v. Chemical Bank, 471 U.S. 1065, 105 S.Ct. 2140, 85 L.Ed.2d 497 (1985), and cert. den Chemical Bank v. Public Utility Dist. No. 1, 471 U.S. 1075, 105 S.Ct. 2154, 85 L.Ed.2d 510 (1985).
 
 
 6
 (b) They established an expansive definition of "seller" for purposes of the Washington State Securities Act (WSSA) that would encompass the Supply System, its 23 members, the 88 participating utilities, and professional defendants, and ensure the Act's applicability to them in MDL 551.
 
 
 7
 (c) They were first to name Ernst & Whinney, in May 1984, as a party defendant in either action. Later sued in MDL, as well, this defendant contributed $6.5 million in settlement.
 
 
 8
 (d) They alleged derivative negligence claims against the Professional defendants that were eventually assigned to Class Plaintiffs in MDL as part of the settlement.
 
 
 9
 (e) They helped organize the WPPSS 4/5 Bondholders' Committee which later brought an action, known as Hoffer v. State, against the State of Washington. In Hoffer the Washington Supreme Court, relying in large part on its prior Haberman decision, held that bondholders had the right to establish liability against the State on certain claims. As a result, the State later contributed $10 million to the settlement of MDL 551.
 
 
 10
 (f) They supported state appellate arguments by counsel for the Haberman Intervenors concerning common law negligent misrepresentations and fraud claims. Such claims were later certified in MDL 551.
 
 
 11
 (g) They challenged the constitutionality of the "Scienter Amendment" to the WSSA before the Washington State Supreme Court and the United States Supreme Court, preserving the issue for review in the event plaintiffs (in MDL 551 or in Haberman ) were unsuccessful in establishing liability under a scienter standard.
 
 
 12
 In re Washington Pub. Power Supply Sys. Sec. Litig., 779 F.Supp. 1063, 1223 (D.Ariz.1990) [hereinafter "WPPSS II "].
 
 
 13
 Attorneys' fees awards are generally reviewed for an abuse of discretion. Bernstein v. City of Seattle, [Nos. 91-16669, 91-16685, 91-16687, op. at 9] --- F.3d ----, ---- (9th Cir.1994); Drucker v. O'Brien's Moving & Storage, Inc., 963 F.2d 1171, 1172 (9th Cir.1992). Whether the district court applied the correct legal standard is reviewed de novo. Price v. Seydel, 961 F.2d 1470, 1475 (9th Cir.1992). It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' "specific services benefited the fund--whether they tended to create, increase, protect or preserve the fund." Lindy Bros. Builders, Inc., v. American Radiator, Etc., 540 F.2d 102, 112 (3d Cir.1976) (hereinafter "Lindy II "). The district court applied the Lindy II rule.
 
 
 14
 Although the district court conceded that the Haberman counsels' efforts may have benefited the Class Plaintiffs, it concluded that the litigation undertaken by the Haberman counsel was not sufficiently related to the class action involving Class Counsel. The court found that
 
 
 15
 the state court proceeding was an independent, somewhat parallel action in a different forum. It was not undertaken by MDL Counsel. It was not waged on behalf of the entire Class, and the entire Class would not have shared all potentially attainable benefits. The two actions were distinct and detached. Thus, while the cases may have been "related," the relationship was attenuated.
 
 
 16
 WPPSS II, 779 F.Supp. at 1225 (footnote omitted). Counsel do not inform us how this conclusion was erroneous.
 
 
 17
 The Haberman counsel did not represent the Class Plaintiffs in MDL 551, but represented distinct plaintiffs in another proceeding in state court. No money judgment or settlement fund was generated in that litigation. We know of no authority which mandates an award of fees to attorneys not formally representing the class, whose activities in representing others incidentally benefit the class.
 
 
 18
 We distinguish two cases relied on by the Haberman counsel. Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), holds that the district court has power in equity to make an award of fees to attorneys who had established the claims of others in certain bonds. It stands for no more than the proposition that the court has the power to entertain a proposal for attorneys' fees in circumstances such as those now before the court. In Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), the Court affirmed an award of attorneys' fees payable by an adverse party for work done in several phases of litigation, including services performed in connection with administrative proceedings necessary to carry out the terms of a consent decree. Neither case suggests that the district court abused its discretion in denying fees to counsel who had served in litigation which, in the words of the district court, "was not sufficiently related to the MDL litigation to warrant payment out of the MDL settlement fund." WPPSS II, 779 F.Supp. at 1225.
 
 
 19
 AFFIRMED.