**In re PRUDENTIAL SECURITIES INCORPORATED LIMITED PARTNERSHIPS LITIGATION.**

MDL No. 1005.
No. M–21–67 (MP).

United States District Court,
S.D. New York.

Jan. 22, 1996.

Miller Milove & Kob by Brian D. Miller, Bradd Milove, San Diego, CA, for First plaintiffs.

Goodkind Labaton Rudoff & Sucharow by Lawrence Sucharow, Joel H. Bernstein, Diane Zilka, Liaison Counsel, New York City, for plaintiffs in MDL No. 1005.

Cahill Gordon & Reindel by Thomas J. Kavaler, New York City, for Prudential defendants.

Ross & Hardies by Marshall Beil, New York City, for Madison Plaza Associates.

ORDER # 51

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**REGARDING APPLICATION BY MILLER MILOVE & KOB**

**FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

MILTON POLLACK, Senior District Judge.

This matter is before the Court on the Application by Miller Milove & Kob (the "Miller Firm") for Attorneys' Fees, Costs and Expenses, dated November 7, 1995 (the "Miller Firm Application"). The Court has received and considered the Miller Firm Application, together with supporting documents, as well as Class Plaintiffs' Memorandum in Opposition to Application by Miller Milove & Kob for Attorneys' Fees, Costs and Expenses, together with supporting documents, including the Joint Declaration of Joel H. Bernstein and H. Sullivan Bunch In Opposition To Applications Of Miller Milove & Kob [and others] For Attorneys' Fees, Costs and Expenses dated November 15, 1995, and, on November 17, 1995 heard Miller Milove & Kob in support of the Miller Firm Application and the Class Plaintiffs in opposition thereto. In addition, the Court has received and considered proposed findings of fact and conclusions of law submitted by Class Plaintiffs' Counsel, the Miller Firm's Objections to such proposed findings and Class Plaintiffs' Counsel's reply thereto. Under all the facts and circumstances, the Miller Firm Application is DENIED.

The Miller Firm, at the Court hearing on their application for an allowance of fees, based its claim for compensation on "the benefits conferred upon the entire class while representing the certified class and initiating the *First* certified class action which became discovery in this MDL proceeding pursuant to your Honor's request."

A brief review of the Miller Firm's relation to the present proceeding is in order. The Miller Firm commenced *First v. Prudential–Bache Securities Inc.* on January 14, 1991 in the United States District Court for the Southern District of California as a putative class action against Prudential–Bache Securities, Inc., which later became "PSI," on behalf of investors in the Madison Plaza Associates Limited Partnership and the Madison Avenue Limited Partnership. The *First* claim alleged securities fraud in connection with the sale of interests in Madison Plaza to these investors. The class was certified on July 29, 1992 and class members were given an opportunity to opt out of the class until October 1, 1992. The *First* action was transferred to this Court by the Judicial Panel on Multidistrict Litigation for purposes of "inclusion in the centralized pretrial proceedings occurring there in this docket" on August 3, 1994. *In re Prudential Securities, Inc.* Transfer Order dated August 3, 1994.

On October 21, 1993, before transfer of the *First* action to this Court, and simultaneously with the filing of the Securities and Exchange Commission ("SEC") of a complaint against PSI in the United States District Court for the District of Columbia, PSI consented to the entry of a Final Order by the District Court for the District of Columbia that required PSI to pay compensatory damages for all valid claims presented through a court-supervised Claims Resolution Process. PSI consented among other things to pay $330 million to establish a fund ("the SEC Fund") for the benefit of defrauded investors and to pay all additional valid claims in excess of the $330 million in the SEC Fund. The SEC Fund was placed under the general supervision of the District Court to be administered by a court-approved Claims Administrator.

Counsel for the Claims Administrator subsequently ruled that members of the *First* class could not participate in the Claims Res-

olution Process until the class was decertified. This ruling created a dilemma for the Miller Firm: by continuing to press the *First* action claims, it was limiting the avenues of recovery available to members of its class. Accordingly, the Miller Firm filed a motion in this Court seeking an additional period to opt-out from the class.

On November 16, 1994 this Court denied the Miller Firm's motion, but, at the Miller Firm's request, decertified the *First* class pursuant to Fed.R.Civ.P. 23(c)(1). 158 F.R.D. 301 (1994). That ruling enabled each member of the previously certified *First* action to file a claim with PSI pursuant to the Claims Resolution Process or to pursue their claims against PSI in any other forum, subject to PSI's defenses. By order of March 17, 1995 this Court, at the Miller Firm's instance, subsequently dismissed the *First* action as against all defendants with prejudice.

Following the decertification, most of the Miller Firm's clients in the *First* class suit, at the Miller Firm's solicitation, employed the Miller Firm on contingent retainers to proceed privately against Prudential on the same claims. Using the preparations of the claims in the *First* action, the Miller Firm successfully negotiated private settlements with Prudential on behalf of these clients apparently totaling in excess of $19 million from which the Miller Firm obtained a fee of approximately $5.25 million.[1] The requested dismissal of the *First* action by this Court subsequently terminated the Miller Firm's right to any class compensation, and did not confer upon the Miller Firm a right to a share of the fees awarded in the present proceeding.

### FINDINGS OF FACT

1. The Miller Firm served as plaintiff class counsel in the action entitled *First v. Prudential–Bache Securities, Inc.*, 91–0047–IEG (BTM), which was commenced in 1991 in the United States District Court for the Southern District of California (the *"First*

*Action"*). The *First Action* was certified by the United States District Court for the Southern District of California as a class action on behalf of purchasers of limited partnership units in Madison Plaza Associates Limited Partnership ("Madison Plaza"), and the Miller Firm was designated as class counsel.

2. Madison Plaza is only one of more than 700 limited partnerships which are the subject of MDL 1005 and the Consolidated Complaint herein.

3. The Miller Firm prosecuted the *First Action* on behalf of the certified class identified therein, undertaking discovery relating to the specific issues and claims asserted in the *First Action,* including deposition and document discovery.

4. The discovery in the *First Action* was directed at identifying specific fraudulent misrepresentations and omissions in the Madison Plaza investment memorandum and supplements, and at establishing a nexus between the alleged misrepresentations and omissions and the cause of the investors' losses. (*See* Letter of the Miller Firm to members of the Class in the *First Action* dated October 10, 1994.)

5. On May 4, 1994, the Judicial Panel on Multidistrict Litigation ("JPMDL") issued a conditional transfer order, transferring the *First Action* to this Court as a tag-along action to MDL 1005. The Miller Firm sought to vacate the JPMDL's conditional transfer order citing, *inter alia,* purported differences between the broad claims in MDL 1005 and the more limited claims asserted in the *First Action.*

6. In support of their motion to vacate the conditional transfer order the Miller Firm stated that:

"The legal and factual contentions of the First Plaintiffs and the consolidated plaintiffs [in MDL 1005] are incompatible."

7. On or about August 3, 1994 the JPMDL, over the Miller Firm's objection, issued an Order transferring the *First Ac-*

---

1. The Miller Firm had obtained a private settlement on behalf of most of the former *First* class members as of the date of dismissal of the *First* claim. *See* Order of March 17, 1995. The Miller Firm did not reveal details of these settlements until the fairness hearing of November 17, 1995 because it claimed these negotiations were made pursuant to a confidentiality agreement.

*tion* to this Court for consolidated or coordinated treatment with MDL 1005.

8. On or about August 9, 1994, the Miller Firm sought, with the consent of Class Counsel in MDL 1005, limited deposition discovery solely relating to issues relevant to the *First Action*, and not necessarily relevant to MDL–1005. This Court granted that discovery request. The Miller Firm's stated intention was to complete the discovery relevant to the *First Action* and seek remand of the *First Action* to the transferor court for trial.

9. On or about October 10, 1994 the Miller Firm sent a letter, not previously approved by this Court, to the Madison Plaza class members in the *First Action*. Among other things, that letter informed the class in the *First Action*, of the Miller Firm's intention to seek decertification of the class in the *First Action* in order to allow those class members, should they choose to do so, to file claims in the SEC Claims Resolution Process.

10. The October 10, 1994 letter solicited class members in the *First Action* to retain the Miller Firm on an individual contingent fee basis to continue to represent their interests with respect to claims arising from their investments in Madison Plaza. The October 10, 1994 letter included a retainer agreement and confidential questionnaire for execution and completion by class members in the *First Action*, together with a stamped envelope addressed to the Miller Firm.

11. Among other things, the October 10, 1994 letter requested that Madison Plaza investors, in selecting counsel to privately represent them, keep in mind that the Miller Firm had spent four years developing a securities fraud case on behalf of the Madison Plaza investors. The letter stated that "Nobody is more knowledgeable concerning the Madison Plaza investment and the evidence of fraud."

12. In addition, the October 10, 1994 letter in setting forth factors which Madison Plaza investors should consider in selecting an attorney to represent them going forward, specifically cited to the extensive work and discovery which the Miller Firm had thereto-

fore performed and obtained in the *First Action*, stating:

> Miller & Milove is poised to present the securities fraud case and has retained top notch experts who have completed reports concerning the fraud in the Madison Plaza investment. Recently we completed the depositions of Edward Strasser (General Partner), David Levine (Pru–Bache Due Diligence Officer), and Paul Tessler (Pru–Bache Asset Manager). We are close to concluding depositions on behalf of the Madison Plaza investors.

and

> We believe *the SEC Claim should include fraud allegations based upon the evidence which has been developed in the [First] class action.* (emphasis in original.)

This clearly evidences that it was the Miller Firm's intention, as represented to its clients, that the work product that they had produced was going to be used for the benefit of the Miller Firm's private clients.

13. The October 10, 1994 Miller Firm letter to Madison Plaza investors did not disclose the ongoing pendency of MDL 1005 prior to or in connection with that solicitation or that the class members in the *First Action* could remain in the MDL 1005 putative class following decertification of the *First Action*.

14. On or about November 16, 1994 this Court granted decertification of the plaintiff class in the *First Action*.

15. Both prior to and following the decertification of the plaintiff class in the *First Action*, the Miller Firm solicited, received and accepted individual contingent fee retainer agreements from investors in Madison Plaza. These individuals were the former members of the plaintiff class in the *First Action* and members of the class in MDL 1005.

16. During January 1995, the Miller Firm undertook negotiations with counsel for Prudential Securities Incorporated ("PSI") to resolve and privately settle the claims of the Madison Plaza investors from whom they had received individual retainer agreements in connection with the decertification of the *First Action*. These claims were settled in

early 1995 and the *First Action* was dismissed with prejudice by Order dated March 17, 1995.

17. The Miller Firm did not act or serve as class counsel in MDL 1005. By soliciting the members of the *First* class to privately retain the Miller Firm, and then privately settling for such clients—which had the effect of excluding them from the class herein—the Miller Firm actually acted in a manner contrary to and in competition with the interests of the Class. For example, the private retainers and secret settlements conflicted with the bargaining power of the Class in MDL 1005.

18. The Miller Firm did not perform any work of a significant or substantial nature with the intent or purpose to benefit MDL 1005.

19. The Miller Firm did not consolidate the *First Action* with the claims in MDL 1005 and was not responsible in the development of the theories asserted in the Consolidated Complaint in MDL 1005 or in the prosecution or settlement of those claims. In fact the Miller Firm actively sought to have its claims separated from the claims of the overall Class herein. To the extent that the Miller Firm contends that it benefited MDL 1005, it was solely through making available to Class Counsel in MDL 1005 certain of the raw discovery materials it had obtained in connection with its prosecution of the independent claims in the *First Action.*

20. The Miller Firm contends that it provided Class Counsel with certain documents, deposition transcripts, deposition summaries, affidavits, and other materials obtained and created by the Miller Firm in connection with the prosecution of the *First Action.*

21. These documents, deposition transcripts, deposition summaries, affidavits, and other materials, to the extent they were made available to Class Counsel in MDL 1005, were of minimal or *de minimis* value to Class Plaintiffs and Class Counsel in connection with the development or prosecution of and/or settlement discussions in MDL 1005 because, among other things:

(a) The documents and other materials consisted essentially of raw data without analysis of their relevance to the claims in MDL 1005 as distinct from the claims in the *First Action;*

(b) Most materials were not timely delivered to Class Counsel;

(c) The materials related to issues which were only peripheral or incidental to the matters asserted in MDL 1005; and

(d) The materials did not enhance the negotiating position of Class counsel in their negotiation of the Settlement with the PSI Settling Defendants. The Miller Firm did not originate, participate in and did not contribute to the creation, negotiation or enhancement of the progress of the Class proceedings as such or provide anything of compensable value for the settlement. Their sole participation came after the settlement was promulgated, by a letter advocating an increase in one of the terms in respect to the allocation for former *First* class members— the few who did not settle privately with the Miller Firm as their personal attorneys or through the SEC proceeding or otherwise— and by this misguided fee application presented to the Settlement Fund. They have not earned any fees additional to those already reaped as indicated hereinabove. The Miller firm never sought to advance the interests of the Class or its partial settlement as opposed to the interests of its private clients.

22. Any overlap between the allegations in the *First Action* and the allegations in MDL 1005 is fortuitous and is not the result of any sharing of discovery materials or information developed in the *First Action* with Class Counsel in MDL 1005.

23. The benefit, if any, which accrued to MDL 1005 from the information or documents obtained, or services rendered, by the Miller Firm in the *First Action* was merely incidental to the Miller Firm's prosecution of the *First Action.* The information and documents obtained in connection with the *First Action* were used by the Miller firm to obtain private settlements for their private clients, for which work the Miller firm was paid.

24. Although certain documents provided by the Miller Firm might under other circumstances have had incidental value in the

prosecution of claims for their personal clients, they presented nothing of influence or use on the negotiation of the settlement for the Settlement Class in MDL 1005. On the whole, the information and/or alleged services provided by the Miller Firm was of insignificant, minimal and *de minimis* value or benefit in the development, prosecution, and partial resolution of MDL 1005 by the settlement achieved by the Class and its associated counsel.

25. The Miller Firm Application reports a lodestar of $2,746,117.50 for work exclusively undertaken by them in the *First Action*. The Miller Firm Application seeks an enhancement multiplier of 2, requesting a fee of $5,492,235. In addition, the Miller Firm Application seeks reimbursement of expenses incurred in the *First Action* in the amount of $543,811.56. The Miller Firm Application, thus seeks an award from the Settlement Class in MDL 1005 in the amount of $6,036,-046.56.

26. In connection with the resolution of the claims of the Madison Plaza investors who had individually retained them on a contingent fee basis, the Miller Firm has represented to the Court that it has received legal fees of approximately $5,250,000. This represents a multiple of almost two times their reported lodestar that they have already received. The application by the Miller Firm does not in any event and under all the facts and circumstances persuade the Court that any enhancement to their lodestar would have been appropriate in this action. Based on the record and the disclosures made at the fairness hearing, it is clear that the Miller Firm received this $5,250,000 in exchange for the services that the Miller Firm is now again applying for before this Court. The

Miller Firm has already been compensated in amounts that far exceed the rates applied for by the members of the Executive Committee of class counsel in MDL 1005, who seek a 1.57 blended multiple for services which actually created the Settlement herein.

27. The ability of the Miller Firm to solicit and obtain individual retainers from Madison Plaza investors; to promptly settle and resolve these claims; and to receive the substantial compensation which it received in connection with the settlement of these claims, was a direct result of the Miller Firm's expenditure of professional time, effort, and expense in the prosecution of the *First Action*.

28. The lodestar and expenses for which the Miller Firm seeks compensation from MDL 1005 actually directly benefitted their individual Madison Plaza clients and they have been compensated in full therefor.[2]

29. The Miller Firm has already received adequate compensation for all of their efforts in connection with their claims herein, and were the Court to grant the Miller Firm Application in any part, the Miller Firm would receive a duplicate payment and windfall at the expense of the Settlement Class for the same legal services.

### CONCLUSIONS OF LAW

 1. Where specific legal services are rendered by counsel which has the effect of benefitting a class by tending to create, increase, protect or preserve a fund, such counsel may equitably be awarded compensation from such common fund available to satisfy claims of class members even if such counsel was not "of record" in the class litigation. *See Sprague v. Ticonic Bank,* 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed.

---

2. In its application, the Miller Firm relies in part on this Court's statement in another context during the November 16, 1994 hearing for decertification, implying that the Miller Firm might be entitled to compensation from an equitable fund for their efforts in the Consolidated Action. There, this Court stated:

> Whatever you have done in four years inures to the benefit of any class that's involved in this thing. You will find there is law which says you are entitled to be recognized.

November 16, 1994 Reporter's Transcript at page 2, line 16. This statement was intended to

leave open the possibility of conferring compensation upon the Miller Firm as a matter of equitable concern. It was issued before dismissal of the *First* action, and before this Court became aware of the extensive compensation the Miller Firm garnered for itself in a private settlement for the *First* class plaintiffs based substantially on the Miller Firm's services for them in MDL 1005 before the decertification hearing. In light of such compensation, this Court now determines that the Miller Firm is not entitled to any further award.

1184 (1939); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 474 (2d Cir.1974); *Dubin v. E.F. Hutton Group, Inc.*, 845 F.Supp. 1004 (S.D.N.Y.1994). Attorneys' fee awards from a common fund depend on whether the attorneys' "specific services benefitted the fund—whether they tended to create, increase, protect or preserve the fund." *Lindy Bros. Builders, Inc. v. American Radiator, Etc.*, 540 F.2d 102, 112 (3rd Cir.1976).

■ 2. That principle, being equitable in nature, does not entitle counsel to double payment for the mere incidental recycling of their original efforts which have been otherwise fully compensated. *Cranston v. Hardin*, 504 F.2d 566, 579–580 (2d Cir.1974) ("[petitioners] have already been adequately compensated since ... they were awarded $750,000 in [another] case. It is a novel assertion that attorneys who are victorious in one case may, like the holder of a copyright, claim fees from all subsequent litigants who might rely on it in one way or another.").

3. "The question of whether, and to what extent, a Firm that represents private parties in separate litigation can recover attorney's fees in a class action covering the same matter has arisen in connection with previous settlements. Courts have held that work that was not undertaken for the purpose of benefitting the class (as opposed to the lawyers' private clients), or which did not actually result in such a benefit, could not be the basis for a fee award." *In re: Prudential–Bache Energy Income Partnerships Securities Litigation*, 1994 WL 202394, *11, 1994 U.S.Dist. LEXIS 6621, *29 (E.D.La. May 18, 1994).

■ 4. Neither the case law nor equity requires compensation where the benefit contributed is incidental, or of a minimal or *de minimis* value to the class. *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1309 (9th Cir.1994) ("We know of no authority which mandates an award of fees to attorneys not formally representing the class, whose activities in representing others incidentally benefit the class."); *Cranston*, 504 F.2d at 579; *In re Marine Midland Motor Vehicle Leasing Lit.*, 155 F.R.D. 416, 423 (W.D.N.Y.1994).

■ 5. Moreover, where legal work has been performed on behalf of claimants who have elected to exclude themselves from the class—particularly where, as here, they have done so at the behest of the counsel seeking fees—it would be inappropriate to impose the cost of that work on the class. *See, generally, Class Plaintiffs*, 19 F.3d at 1306; *In re "Agent Orange" Product Liability Litigation*, 818 F.2d. 226 (2d Cir.1987); *Cranston*, 504 F.2d at 579; *Marine Midland*, 155 F.R.D. at 422–423.

## CONCLUSION

For all of the foregoing reasons and under all the facts and circumstances, the Court DENIES the Miller Firm Application in its entirety, concluding that the Miller Firm has been fully compensated for its services and that the information and/or assistance it provided or rendered in connection with the prosecution and/or settlement of MDL 1005 was of only incidental, minimal, or *de minimis* benefit to the Settlement Class, requiring no further compensation.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of law including the preliminary Opinion set forth above, regarding application by the Miller Firm for attorneys' fees, costs and expenses. In view of the substantial administrative matters involving thousands of claims in the distribution process concerning the Partial Settlement herein and the ongoing pendency of their claims in this docket against others not involved in this matter, this Court certifies in accordance with Rule 54(b) Fed. R.Civ.P. that final judgment should be entered on the matters involved herein and the Court expressly determines there is no just reason for delay and the Clerk is directed to enter final judgment hereon forthwith.