133 F.3d 927
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re: HEXCEL CORPORATION, Debtor.
BREWER & PRITCHARD, P.C.; Harvey Construction Company, Appellants,
HEXCEL CORPORATION, Appellee.
 Nos. 97-15172, 97-15175.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 11, 1997.
Decided Jan. 12, 1998.
 
 Before: ALDISERT**, D.W. NELSON and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In a 1992 Settlement Agreement reached during previous litigation, Hexcel assigned to Harvey the claims it may have had against its insurance carriers, and the parties agreed to share in the proceeds from these claims. The law firm of Brewer & Pritchard worked for Harvey to amass $2.2 million in proceeds, and in this law suit it contends that it should be compensated by Hexcel for collecting Hexcel's share, Brewer and Pritchard and Harvey's appeal presents three issues: (1) whether the bankruptcy court erred in denying Brewer attorneys' fees for its work in creating a "common fund" in the proceeds; (2) whether the district court erred in denying Harvey 50% of the proceeds Hexcel gained from unrelated insurance settlements; and (3) whether this court has jurisdiction over the district court's order reversing and remanding the bankruptcy court's order that Hexcel pay Harvey sanctions.
 
 
 3
 The district court held there was insufficient evidence for the bankruptcy court to find that Hexcel agreed to pay Harvey a sanction award from the previous litigation, and remanded for further findings. Harvey and Brewer appealed. The parties are familiar with the procedural history, the facts and the issues raised or appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d) in the first two issues and affirm. We lack jurisdiction to consider the third issue.
 
 I.
 
 4
 Because the Settlement Agreement had already made Hexcel Harvey's creditor with respect to the assigned insurance claims, Brewer's subsequent efforts did not create a common fund from which Hexcel directly benefited and for which Hexcel must pay attorneys' fees. See Bashara v. Baptist Mem'l Hosp. Sys., 685 S.W.2d 305, 310-311 (Tex.1985). The common fund doctrine is an exception to the "American rule" that attorneys' fees are borne by each litigant separately, and is based on equitable principles of restitution. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-258 (1975); see also Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir.1994). It "provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." Vincent v. Hughes Air West, Inc., 557 F.2d 759, 769 (9th Cir.1977). Application of the doctrine is "appropriate only in exceptional cases and for dominating reasons of justice." Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 167 (1939).
 
 
 5
 Brewer's efforts in reaching settlements did benefit Hexcel, but benefitting Hexcel alone is insufficient to charge it fees under the common fund doctrine; Brewer's efforts must have created for Hexcel an interest in the fund that is "co-equal" to Harvey's. See Bashara, 685 S.W.2d at 310. It is settled that:
 
 
 6
 No one can legally claim compensation for voluntary services to another, however beneficial they may be, ... nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed.
 
 
 7
 Landham v. State, 97 S.W.2d 264, 265 (Tex.App.1936). In Lancer Corp. v. Murillo, 909 S.W.2d 122, 228 (Tex.1995), an employer who paid medical expenses to a participant in its insurance plan was not merely in a debtor-creditor relationship with the participant when they sued the tortfeasor. Rather, the employer had a right of subrogation in the lawsuit to collect the medical expenses it paid, but did nothing to help in the lawsuit. The participant's attorney performed all the work to collect from the tortfeasor, thus creating a common fund. By contrast, Hexcel could not assert any claims against the insurance companies from which Brewer obtained settlements because these claims were irrevocably assigned to Harvey. Hexcel was Harvey's creditor for half of the $2.2 million recovered. There was no common fund.
 
 II.
 
 8
 The Settlement Agreement ambiguously sets out which of Hexcel's claims against its insurers it assigned to Harvey, but the circumstances of the settlement negotiations demonstrate that the parties only intended to assign claims that were related to the underlying litigation. See Southwest Airlines Co. v. Jaeger, 867 S.W.2d 824, 829 (Tex.App.1993). A contract is ambiguous if its meaning is "uncertain and doubtful or it is reasonably susceptible to more than one meaning." Whether a contract is ambiguous is a question of law. Id. The assignment provision of the Settlement Agreement states:
 
 
 9
 Hexcel hereby irrevocably assigns to Harvey all its right, title and interest in and to any and all claims or causes of actions against all insurers of Hexcel which do or may have liability coverage related to this lawsuit....
 
 
 10
 There is ambiguity in whether the phrase "which do or may have liability coverage related to this lawsuit" modifies the claims assigned or the insurers who have coverage. If it modifies "claims", then Hexcel assigned only claims related to the underlying litigation. If it modifies "insurers", then Hexcel assigned all claims, whether related or not.
 
 
 11
 The bankruptcy court interpreted the ambiguity by finding: (1) the subject of unrelated claims was not discussed during settlement negotiations between Harvey and Hexcel in October 1992, nor did Harvey claim any entitlement to the unrelated settlement proceeds when acquired in June 1993, but waited until July 1994; (2) because the negotiations were conducted late at night for many hours under time pressure, a "dangling modifier would not be surprising under the circumstances"; and (3) the use of the word "coverage" is more likely to be used to refer to "claims" than to "insurers." It concluded that Hexcel assigned only related claims. We agree.
 
 
 12
 The bankruptcy court was apparently confused about the date on which Harvey asserted its entitlement to the unrelated insurance settlement proceeds; it was in July 1993, not July 1994. Nevertheless, this does not minimize the fact that the parties never discussed the assignment of unrelated claims until after the negotiations. The bankruptcy court's conclusion was not clearly erroneous.
 
 III.
 
 13
 The district court had jurisdiction over Hexcel's cross-appeal because it was filed on November 22, 1995, within ten days after either Harvey's notice of appeal was file-stamped on November 14 or Harvey's amended notice was filed on November 16. See Rule 8002(b), Federal Rules of Bankruptcy Procedure.
 
 
 14
 There is confusion over the filing dates because Harvey attempted to file a notice of appeal from the bankruptcy court's October 4 judgment on November 7, but the clerk did not file and stamp it until November 14, when Harvey paid the filing fee. The Bankruptcy Appellate Panel (BAP) considered whether Harvey's notice of appeal was delinquent, but it decided that Harvey's late filing fee should not defeat its appeal. The BAP considered it "filed on November 7", but this decision was months after Hexcel needed to file its cross-appeal. Under these circumstances, Hexcel was entitled to rely on the November 14 file-stamp as the date from which the ten day period ran.
 
 
 15
 Alternatively, Hexcel's cross-appeal should be timed not from Harvey's November 7 notice of appeal, but from the date of Harvey's amended notice of appeal filed on November 16, after the bankruptcy court filed an Amended Judgment on November 9. Either way, the district court had jurisdiction over Hexcel's cross-appeal. We, however, do not.
 
 
 16
 Whereas a district court's decision affirming or reversing a final bankruptcy court order is itself final and reviewable by this Court, "when the district court remands for further factual findings related to a central issue raised on appeal, its order is ordinarily not final and we lack jurisdiction." In re Bonner Mall Partnership, 2 F.3d 899, 904 (9th Cir.1993). This Court may still exercise jurisdiction over certain remanded issues that are legal in nature, but the matter remanded to the bankruptcy court was factual, not legal. See In re Vylene Enters., 968 F.2d 887, 895 (9th Cir.1992). We therefore conclude that this Court lacks jurisdiction under 28 U.S.C. § 158(d) to entertain an appeal from the district court's order of remand.
 
 
 17
 We have considered all arguments advanced by the parties and have concluded that no further discussion is necessary.
 
 
 18
 AFFIRMED as to the common fund and claim assignment issues. The appeal from the district court's order of remand is DISMISSED for lack of jurisdiction
 
 
 
 **
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts in this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 **
 * The panel unanimously finds this case suitable for decision without oral argument Fed. R.App. 34(a) and Ninth Circuit Rule 34-4